Jason A. Imes, Esq., NV Bar No. 7030
Schwartzer & McPherson Law Firm
2850 South Jones Blvd., Suite 1
Las Vegas NV  89146-5308
Telephone:    (702) 228-7590
Facsimile:    (702) 892-0122
E-Mail: bkfilings@s-mlaw.com
*Attorneys for Lenard E. Schwartzer, Trustee*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>MEDIZONE INTERNATIONAL, INC.,<br><br>Debtor. | Case No. BK-S-18-12662-LEB<br><br>Chapter 7<br><br>**EMERGENCY MOTION FOR ORDER AUTHORIZING TRUSTEE TO OPERATE DEBTOR'S BUSINESS (11 U.S.C. §721)**<br><br>Hearing Date:   OST Requested<br>Hearing Time:   OST Requested |

Lenard E. Schwartzer (the "Trustee"), Chapter 7 Trustee for the above-captioned bankruptcy case, by and through his counsel, Schwartzer & McPherson Law Firm, hereby files this *Emergency Motion For Order Authorizing Trustee To Operate Debtor's Business (11 U.S.C. §721)* (the "Operating Motion").

This Operating Motion is made pursuant to 11 U.S.C. §721, the points and authorities set forth herein, the Declaration of Lenard E. Schwartzer, the pleadings on file, and any arguments heard at the time of the hearing on this matter. The Trustee seeks authorization *nunc pro tunc* to operate Debtor's business for approximately 90 days from the Petition Date (May 8, 2018 to August 10, 2018) pursuant to 11 U.S.C. §721. The Trustee is concurrently seeking (by separate motion) authorization for post-petition financing to provide funds for said operation.

## I.   JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

///

## II.    CASE BACKGROUND

1. On April 18, 2018, creditors Edwin G. Marshall and Dr. Jill C. Marshall (collectively, the "Marshalls"), and creditor Ushio America, Inc. (together with the Marshalls, the "Petitioning Creditors"), filed an involuntary petition under Chapter 11 the Bankruptcy Code against Debtor MEDIZONE INTERNATIONAL, INC. (the "Debtor") in Reno, Nevada, thereby commencing bankruptcy case number 18-50412-GWZ (the "Involuntary Chapter 11 Case").

2. On May 8, 2018 (the "Petition Date"), the Debtor filed its own voluntary case pursuant to Chapter 7 of the Bankruptcy Code in Las Vegas, Nevada, commencing this case and the Trustee has been appointed to administer the Chapter 7 estate.

3. On the same day (May 8, 2018), Debtor also filed a motion in the Involuntary Chapter 11 Case seeking to transfer venue of the Involuntary Chapter 11 Case:

> to the informal Southern Nevada/Las Vegas Division of Nevada, so that the Court overseeing the company's Voluntary Chapter 7 Case, and the Chapter 7 Trustee therein can determine whether to ultimately dismiss the Involuntary Case in favor of the Voluntary Case.

*Motion for Intra-District Transfer*, Case No. 18-50412-GWZ [ECF No. 26].

4. The Debtor is a publicly traded company and its most recent Form 10-K annual report filed March 20, 2018, with the United States Securities and Exchange Commission provides the following background on the company:

    a. The Debtor is a global provider of disinfection solutions and invented the AsepticSure® system of disinfecting non-porous surfaces in numerous settings, including hospitals, other healthcare facilities and non-hospital/healthcare facilities, utilizing a hydrogen peroxide vapor and ozone in a patented process.

    b. The Debtor owns a number of patents registered in the United States, Europe, Canada, China, Singapore and Mexico, and has patent applications pending in 38 countries that are parties to the EU Patent Treaty as well as South Korea, India, Singapore, Brazil and Mexico.

    c. The Debtor's business is subject to various degrees of governmental regulation. In the United States, the FDA, the EPA and other governmental authorities regulate the development, manufacture, sale, and distribution of the AsepticSure® system. Government regulations include detailed inspection of, and controls over, research and development, clinical investigations, product

        approvals and manufacturing, marketing and promotion, sampling, distribution, record-keeping, storage, and disposal practices.

    d.    In November 2016, Debtor received EPA registration of the AsepticSure® system for use as a disinfectant for animal pathogenic bacteria on hard nonporous surfaces in food processing plant premises, food processing equipment, hospital premises, hotels, motels, and sports venues (stadiums).

    e.    Debtor received approval by the regulating bodies of Canada, New Zealand, and Chile for the AsepticSure® system to commence commercialization of the system and is pursuing approval by the appropriate authorities in other countries.

    f.    As of December 31, 2017, Debtor had seven full-time employees and two part-time employees involved in research and development and administrative activities.

    g.    In March 2017, Debtor relocated its executive offices and principal facilities to 350 E. Michigan Avenue, Suite 500, Kalamazoo, Michigan, 49007, and maintains a website at *http://medizoneint.com*.

    h.    Effective July 1, 2009, Debtor entered into a lease agreement and established its own certified laboratory located in Ontario, Canada. The lease term is June 2016 through June 2018 with a lease payment of $3,550 Canadian Dollars plus the applicable goods and services tax.

    h.    "We have a history of losses and have a substantial accumulated deficit, which raise substantial doubt about our ability to continue as a going concern. The report of our auditors on our consolidated financial statements for the years ended December 31, 2017 and 2016, as well as for prior years, contains an explanatory paragraph raising substantial doubt about our ability to continue as a going concern. Our significant losses since inception and accumulated deficit of $40,085,981 as of December 31, 2017, raise substantial doubt about our ability to continue as a going concern."

    i.    Debtor has financed its operations since inception primarily by the sale of its common stock in small private placements to accredited investors and drawdowns under a prior equity line of credit.

    j.    Debtor has failed to make payments on several of its existing debt obligations to former officers and other creditors.

5.     The Trustee has been contacted by the Marshalls and they are interested in purchasing the assets of the bankruptcy estate. The Trustee has determined that the value of the estate's assets (including but not limited to inventory, patent rights, and pending regulatory approvals) will be substantially diminished and/or lost if the business does not continue to operate.

6. Based on the available information and the Trustee's evaluation of the situation and the business operation, the Trustee seeks authorization *nunc pro tunc* to operate the Debtor's business for approximately 90 days after the Petition Date (May 8, 2018 to August 10, 2018) while he evaluates a sale of the estate's assets. He has concluded it is in the best of interest of the estate to continue operating the business for a short period because retention of the key employees is necessary for operation and value of the business, the pending regulatory applications (including EPA, FDA, etc.) must be kept moving to preserve the future value of the enterprise, and a number of hazardous pathogens are maintained and must be kept secure at the Debtor's certified laboratory in Canada. *See* Schwartzer Declaration.

7. During the short period of time that the Trustee anticipates operating the Debtor's business, the Trustee proposes to fund the continued operation of the business with post-petition financing offered by the Marshalls. Authorization for the post-petition financing from the Marshalls is being sought by separate motion pursuant to 11 U.S.C. §364.

8. The Trustee is not aware of any secured claims against the Debtor's assets, and none have been disclosed in Debtor's schedules [ECF No. 1].

9. The Trustee and the Marshalls have worked with key employee Dr. Michael E. Shannon M.A., M.Sc., M.D. (former director and president) to develop an operating budget for the next 90 days that will provide sufficient funds to keep the business open, keep the lab secure, and to continue pursuing the regulatory approvals. A copy of the budget is attached as **Exhibit "1."**

10. The business will be operated by Dr. Shannon and the key employees identified in the proposed budget (**Exhibit "1"**) under the supervision and direction of the Trustee. The Trustee believes Dr. Shannon is well qualified to continue overseeing operation of the lab. A copy of Dr. Shannon's CV from the Debtor's most recent Form 10-K is attached as **Exhibit "2."**

### III. MEMORANDUM OF LAW

A. **11 U.S.C. § 721**

Although a business entity that files a Chapter 7 petition for relief generally does not continue to operate post-petition, 11 U.S.C. §721 provides a basis for the Court to permit a Chapter 7 trustee to operate a debtor's business. Section 721 provides:

> The court may authorize the trustee to operate the business of the debtor for a limited period, if such operations is in the best interest of the estate and consistent with the orderly liquidation of the estate.

Section 721 permits the continued operation of a business: 1) for a limited time, and 2) if the operation is in the best interest of the estate and consistent with the orderly liquidation of the estate. "Section 721 contemplates such authorization only in a limited number of situations, such as where it appears that a business could be sold for a greater price as a going concern than would be obtained in ordinary liquidation," see In re A & T Trailer Park, Inc., 53 B.R. 144, 147 (Bankr. D.Wy. 1985), or where such operations would allow creditors to obtain a greater recovery on their claims. See e.g., Magill v. Springfield Marine Bank (In re Heissinger Resources Ltd.), 67 B.R. 378 (C.D. Il. 1986). However, "[t]he bankruptcy court will not generally grant authority to continue a business under §721 if an operating loss will result or if it would need to be continued beyond a limited time. 4 Collier on Bankruptcy para. 721.03 at 721-2 (15th ed. 1985)." A & T Trailer Park, Inc., 53 B.R. at 147-48.

In this case, the Trustee seeks authorization to continue to operate the Debtor's business for a limited period of 90 days from the Petition Date (May 8, 2018 through August 10, 2018). The Trustee's operation of the business is also subject to separate approval by the Court of a post-petition loan from the Marshalls (or other suitable approved lender). Based upon a review of the Debtor's operations, the Trustee believes that the continued operation of the Debtor's business will allow for greater recovery for the estate and its creditors. *See* Schwartzer Declaration.

## CONCLUSION

Based upon the foregoing, the Trustee respectfully requests that the Trustee be authorized *nunc pro tunc* to operate Debtor's business pursuant to 11 U.S.C. §721 for approximately 90 days after the Petition Date (May 8, 2018 through August 10, 2018), subject to separate approval by this Court of post-petition financing pursuant to 11 U.S.C. §364 sufficient to fund such operation.

A proposed form of Order is attached as **Exhibit "3."**

Dated: May 22, 2018.  /s/Jason A. Imes
Jason A. Imes, Esq.
Schwartzer & McPherson Law Firm
2850 S. Jones, Blvd., Suite 1
Las Vegas, NV 89146
*Counsel for Lenard E. Schwartzer, Trustee*

# EXHIBIT "1"

**EXHIBIT "A" – BUDGET**

(in Canadian Dollars)

| ITEM | JUNE | JULY | AUGUST | TOTALS |
|---|---|---|---|---|
| Payroll – D. Simpson | 3,000 | 3,000 | 3,000 | 9,000 |
| Payroll – J. Newton | 2,750 | 2,750 | 2,750 | 8,250 |
| Payroll – P. Uy | 3,500 | 3,500 | 3,500 | 10,500 |
| Payroll – M. MacLaren | 2,500 | 2,500 | 2,500 | 7,500 |
| Payroll – M. Shannon | 20,000 | 20,000 | 20,000 | 60,000 |
| Laboratory Rent | 4,012 | 4,012 | 4,012 | 12,036 |
| Supplies (oxoid, stericycle, Fisher) | 1,660 | 1,660 | 1,660 | 4,980 |
| FDA Materials Comp. Testing | 6,000 | 6,000 | 0 | 12,000 |
| Freight, postage | 500 | 500 | 500 | 1,500 |
| Liability insurance | 500 | 500 | 500 | 1,500 |
| Contingency | 1,000 | 1,000 | 1,000 | 3,000 |
| FDA Testing | 1,500 | 1,500 | 1,500 | 4,500 |
| Travel | 1,500 | 0 | 0 | 1,500 |
| Regulatory Counsel | 5,000 | 0 | 0 | 5,000 |
| Patent annuities | 7,000 | 0 | 0 | 7,000 |
| TOTALS: | 60,422 | 46,922 | 40,922 | 148,266 |

# EXHIBIT "2"

**Dr. Michael E. Shannon M.A., M.Sc., M.D.,** became a director on August 18, 2008 and President of the Company in 2011. He also serves as Director of Medical Affairs since 2002 and in October 2008 was appointed President of the Canadian Foundation for Global Health, a not-for-profit association founded by the Company. Dr. Shannon received his medical degree from Queen's University in Canada, which included advanced training in surgery and sports medicine. He also holds post-graduate degrees in neurochemistry and physiology. He has been actively engaged in applied medical research within these areas for over 28 years. He served in the Canadian Forces for 31 years, retiring at the rank of Commodore (Brigadier General equivalent) as Deputy Surgeon General for Canada. During the first Gulf War, Dr. Shannon served as the senior medical liaison officer for all of the Canadian forces. In 1996, he assumed responsibilities within Health Canada for re-organizing the Canadian blood system. Working with both the provincial and federal governments, he oversaw the development of a new corporate entity dedicated exclusively to the management of blood services in Canada. He was then appointed Director General for the Laboratory Centre for Disease Control, a position he held for three years. In December 2000, Dr. Shannon left the Canadian federal government to pursue a new career in industry. In that capacity, he simultaneously directed a phase III clinical trial in Canada, the United States and Great Britain for an artificial blood substitute product. Following completion of that work, he was asked to accept a special assignment with the Canadian Federal Government Auditor General's office to conduct a cost benefit analysis of all government sponsored pharmacare programs and make recommendations directly to the Parliament of Canada. His assignment and presentation to Parliament was completed in November 2004. Dr. Shannon then served on a special assignment to the Canadian Public Health Agency (Centers for Disease Control equivalent in the United States) as Senior Medical Advisor. His responsibility was to direct the rebuilding of the Emergency Medical Response Capacity for Canada. In this regard and under his direction, the largest emergency medical response exercise in the history of the country, involving the overnight construction of a mobile hospital, hundreds of doctors and thousands of patients, was successfully held in Toronto in December 2007. Dr. Shannon has been actively engaged in medical bio-oxidative ($O_3$) based research since 1987 and was directly responsible for the first human clinical trial to have ever been approved in North America which examined the efficacy of $O_3$ delivered via minor autohemotherapy in the treatment of AIDS. He was also responsible for several primate studies utilizing $O_3$ involving scientists from various departments within the Canadian Federal Government, as well as senior investigators from the Company and Cornell University. Dr. Shannon's qualifications to serve as a member of the Board of Directors include his extensive medical research and related experience and other accomplishments noted above.

**Vincent C. Caponi** became a director in October 2014. Mr. Caponi currently is retired from Ascension Health and serves as an independent consultant for the system. He served as President and CEO of St. Vincent Medical Center in Bridgeport, CT from July 2016 to July 2017. Until July 2013, Mr. Caponi served as the Chief Executive Officer of St. Vincent Health. He grew the St. Vincent Health ministry to a 22-hospital system serving central and southern Indiana. St. Vincent Health is one of Indiana's largest employers. Ascension Health of St. Louis, Missouri – the sponsor of St. Vincent Health – is the nation's largest Catholic non-profit health system with 130 hospitals located in 28 states. Mr. Caponi is the former Executive Board Chair for St. Vincent Health (2013-2015) and Executive Board Chair for Ascension Texas (2014-2016). Mr. Caponi also served as the special representative for Ascension Health in the Cayman Islands at Health City Cayman Island hospital, a joint venture between Ascension Health and Narayana Health, India. In the first quarter of 2016, Mr. Caponi served as the Interim CEO for Ascension Wisconsin and now is a special advisor for that ministry. Mr. Caponi is the Chairman of our Compensation Committee and serves on our Audit Committee. Our Board believes that Mr. Caponi's extensive executive experience in the healthcare industry qualifies him to serve on our Board.

**Stephen F. Meyer** became a director in May 2017. From December 2010 until the company's merger with Hill-Rom, Inc. in October 2015, Mr. Meyer was the President and Chief Executive Officer of Welch Allyn, Inc., a privately-held developer, manufacturer and marketer of frontline care devices and diagnostic solutions, headquartered in Skaneateles Falls, New York. He joined Welch Allyn in 1981 as a sales representative in Detroit, Michigan. Mr. Meyer held a series of executive and senior leadership roles in a variety of areas from international sales and marketing to product development, operations, and general management. As President and CEO, Mr. Meyer navigated Welch Allyn during a time of substantial industry change, developing and executing a new strategy, restructuring the business, engaging more deeply with customers, and becoming more acquisitive. Mr. Meyer is an executive advisor to Beecken Petty O'Keefe & Company, a private equity management firm that focuses on the healthcare industry, is a member of the board of directors of Paragon Medical, Inc. and SRC Ventures, Inc., and is an advisor to Medical Distribution Solutions, Inc., a leading publicity and content company in the health care business and is an advisor to the founder of Vitls, an early-stage company focused on remote patient monitoring. He also is a founder and the managing director of River Marsh Capital, LLC, a firm investing primarily in healthcare developments which enhance and improve health, and providing corporate advisory services to companies, private equity, and venture firms. He is a past board member of TIDI Medical Products LLC, a past board member and chair of MedTech (Central New York's Medical Technology Association), a past board member and president of the Health Industry Manufacturers Marketing Council, a past board member of AdvaMed and Medical Device Manufacturers Association, and past board member of AAFP's Foundation. Mr. Meyer received a Bachelor of Science in Biology from Alma College and earned a Master's of Business Administration from the William E. Simon Graduate School of Business at the University of Rochester, New York. In addition to the achievements noted above, our Board believes that Mr. Meyer's experience in marketing and product development in the healthcare industry qualify him to serve as a member of our Board of Directors.

# EXHIBIT "3"

Jason A. Imes, Esq., NV Bar No. 7030
Schwartzer & McPherson Law Firm
2850 South Jones Blvd., Suite 1
Las Vegas NV  89146-5308
Telephone:     (702) 228-7590
Facsimile:      (702) 892-0122
E-Mail:          bkfilings@s-mlaw.com
*Attorneys for Lenard E. Schwartzer*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>MEDIZONE INTERNATIONAL, INC.,<br><br>　　　　　　　　　　　　　　Debtor. | Case No. BK-S-18-12662-LEB<br><br>Chapter 7<br><br>**[PROPOSED] ORDER GRANTING EMERGENCY MOTION FOR ORDER AUTHORIZING TRUSTEE TO OPERATE DEBTOR'S BUSINESS (11 U.S.C. §721)**<br><br>Hearing Date:   OST Requested<br>Hearing Time:   OST Requested |

　　　The Trustee's *Emergency Motion for Order Authorizing Trustee to Operate Debtor's Business (11 U.S.C. §721)* (the "Operating Motion") [ECF No. ____ ] having come before this Court on _____, 2018, pursuant to an Order Shortening Time [ECF No. ____ ]; Lenard E. Schwartzer (the "Trustee"), Chapter 7 Trustee, appearing by and through his counsel, Jason A. Imes., Esq., Schwartzer & McPherson Law Firm;  other parties appearing as noted on the record;  the Court finding that notice has been given to all creditors and parties in interest as required by law, there being no opposition, the Court having made its findings of fact and conclusions of law upon the record which are incorporated herein pursuant to Federal Rules of Bankruptcy Procedure 9014(c) and 7052, and for good cause appearing,

　　　**IT IS HEREBY ORDERED** that the Trustee's Operating Motion is GRANTED; and

**IT IS FURTHER ORDERED** that the Trustee is authorized *nunc pro tunc* pursuant to 11 U.S.C. §721 to operate the Debtor's business for approximately 90 days from the Petition Date (May 8, 2018 to August 10, 2018); and

**IT IS FURTHER ORDERED** that the Trustee's authorization to operate the business during this period is subject to separate approval by this Court of post-petition financing pursuant to 11 U.S.C. §364 to fund such operation.

Submitted by:

_____
Jason A. Imes, Esq.
Schwartzer & McPherson Law Firm
2850 South Jones Blvd., Suite 1
Las Vegas NV  89146
*Attorneys for Lenard E. Schwartzer, Trustee*

### LR 9021 CERTIFICATION

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐ The court waived the requirement of approval under LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion.

☐ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated above.

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objection to the form or content of the order.

_____
Jason A. Imes, Esq.
Schwartzer & McPherson Law Firm

### # # #