Jason A. Imes, Esq., NV Bar No. 7030
Schwartzer & McPherson Law Firm
2850 South Jones Blvd., Suite 1
Las Vegas NV  89146-5308
Telephone:      (702) 228-7590
Facsimile:       (702) 892-0122
E-Mail:bkfilings@s-mlaw.com
*Attorneys for Lenard E. Schwartzer, Trustee*

### UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>MEDIZONE INTERNATIONAL, INC.,<br><br>Debtor. | Case No. BK-S-18-12662-LEB<br><br>Chapter 7<br><br>**DECLARATION OF LENARD SCHWARTZER SUPPORTING MOTION FOR APPROVAL OF BID PROCEDURES AND TO APPROVE SALE OF ESTATE PROPERTY FREE AND CLEAR OF ANY INTEREST**<br><br>Hearing Date:   (OST Pending)<br>Hearing Time:   (OST Pending) |

I, LENARD E. SCHWARTZER, do declare the following under penalty of perjury:

1. I am over the age of eighteen and I am competent to make this Declaration. I have personal knowledge of the facts in this matter, except where stated upon information and belief.

2. I am the duly appointed Chapter 7 Panel Trustee for the bankruptcy estate of Medizone International, Inc., and I make this Declaration in support of my *Motion for Approval of Bid Procedures and to Approve Sale of Estate Property Free and Clear of Any Interest* (the "Motion").

3. I am seeking authorization to sell substantially all of the assets of the bankruptcy estate, including but not limited to inventory, intellectual property, personal property, and goodwill, pursuant to 11 U.S.C. §363 and the terms set forth with more particularity in the *Purchase and Sale Agreement* attached to the Motion as **Exhibit "1."** The assets will be sold "as is," without warranty, and free and clear of any liens, claims or encumbrances, and the sale expressly excludes any avoidance and recovery claims I may pursue pursuant to Chapter 5 of the Bankruptcy Code. The proposed buyers, EDWIN G. MARSHALL and JILL C. MARSHALL, N.M.D (collectively the "Marshalls" or

"Buyers") have offered to pay $500,000.00 cash upon closing to purchase the assets, **subject to overbids**.

4. I am requesting that the Court approve bid procedures and set a separate hearing (no less than fourteen days after oral approval of this Motion by the Court) to conduct the auction, to confirm the results of the auction, and for final approval of the sale.

5. I recommend selling the assets pursuant to the proposed terms **or for such higher qualified bid as the Trustee may receive pursuant to the proposed bid procedures.**

6. On April 18, 2018, creditors Edwin G. Marshall and Dr. Jill C. Marshall (collectively, the "Marshalls"), and creditors Ushio America, Inc., and Engineering CPR, Inc. (together with the Marshalls, the "Petitioning Creditors"), filed an involuntary petition under Chapter 11 the Bankruptcy Code against Debtor MEDIZONE INTERNATIONAL, INC. (the "Debtor") in Reno, Nevada, thereby commencing bankruptcy case number 18-50412-GWZ (the "Involuntary Chapter 11 Case").

7. On May 8, 2018, the Debtor filed its petition pursuant to Chapter 7 of the Bankruptcy Code in Las Vegas, Nevada, and I was appointed to administer the Chapter 7 estate. I have been granted authorization to operate the business for approximately 90 days from June 1, 2018 through August 31, 2018 [ECF No. 36], and has been authorized to borrow up to $200,000.00 from the Marshalls to fund said operation [ECF No. 40 and 53].

8. I have been contacted by the Marshalls based on their interest in purchasing substantially all of the assets of the bankruptcy estate. The terms of the sale are set forth with more particularity in the *Purchase and Sale Agreement* (the "Sale Agreement") attached to the Motion as **Exhibit "1."** The assets to be sold include all assets used for the operation of Debtor's business, including but not limited to the intellectual property, real property, fixtures, tangible and intangible personal property, inventory, goodwill, and other assets of the business (the "Assets").

9. The sale does not, however, include the sale or transfer of any avoidance claims or causes of action arising from the provisions of Sections 542 through 553 of the Bankruptcy Code (collectively, the "Avoidance Claims"). Any and all Avoidance Claims are excluded from the Assets to be sold and will be retained by me.

10. The proposed purchase price is $500,000.00 cash, **subject to higher bid.** I propose

selling these assets "as is," "where is," and without warranty of title except to warrant that I have not previously disposed of the bankruptcy estate's interest in the Assets.

11. I am not aware of any secured claims against the Debtor's assets, and none have been disclosed in Debtor's schedules [ECF No. 1], except for the post-petition operational loan from the Marshalls, not to exceed $200,000.00, that is secured by a super-priority claim and senior-most lien on the Assets [ECF No. 53].

12. I believe that the proposed sale terms are fair and reasonable, but recommend accepting higher qualified bids (with all terms other than the purchase price remaining the same) pursuant to the following bidding procedures (the "Bid Procedures"):

    a. Any overbid incorporates all other terms of the Purchase Agreement (except as to purchase price), including without limitation the absence of any financing or due diligence contingency;

    b. Any overbid must be accompanied by a good-faith cash deposit in an amount no less than $100,000.00, delivered to the Trustee by certified funds no less than three (3) business days prior to the auction; and

    c. Any overbid must offer a cash purchase price that is at least $575,000.00, and is at least $35,000 greater than any preceding overbid accepted by Trustee; and

    d. The Marshalls have the right to match any overbid accepted by the Trustee as to purchase price, upon the same terms as the Purchase Agreement in all other respects, in which event the Marshalls shall become the accepted bidder, subject to further overbids; and

    e. In the event that the Assets are sold to a purchaser other than the Marshalls, the Trustee shall pay the Marshalls a breakup fee in the amount of $35,000.00, at the close of such sale from the sales proceeds; and

    f. The Trustee shall obtain Bankruptcy Court approval of an overbid/auction process that includes each of the foregoing terms, including without limitation the Marshalls' right to the breakup fee, prior to such overbids and auction occurring.

g. In the event any party intends to overbid, the Trustee proposes that said auction be conducted in open court and under the supervision of the Bankruptcy Court, and that the second highest bidder, if consenting, be designated as the backup bidder.

13. Toward that end, I request that this Court also set a separate hearing (the "Sale Hearing") after the Court's approval of the proposed terms and bid procedures set forth in this Motion for the purpose of conducting auction, to confirm the results, and for final approval of the sale.

14. I believe the proposed sale of the Assets on these terms is justified, and in my business judgment I have concluded the proposed sale is the most beneficial to the estate.

15. My negotiations with the Marshalls have been made in good faith and there are no side agreements. I believe that the sale price and other terms for the sale of the Assets represent the best terms available for the sale of the Assets, but the Court should still take higher qualifying bids pursuant to the proposed Bid Procedure.

16. I will file a Report of Sale with this Court when the proposed sale to the Buyer, or a higher qualified bidder, is completed. No further confirmation of sale will be sought.

17. I have undertaken extensive discussions with interested parties and interested buyers and concluded that the proposed sale of the Assets as proposed herein provides the best opportunity for a recovery by creditors. If a sale is not approved, I anticipate liquidation of the Debtor's assets will result in substantially less benefit.

18. I have concluded that adoption of the Bid Procedures will provide interested parties with the opportunity to present bids for the Assets and will facilitate the solicitation, submission and evaluation of qualified bids for the Assets by me and the Court. The Bid Procedures have been designed to maximize the value of the sale for the estate and creditors. The Bid Procedures expressly state the amount of initial overbid (no less than $575,000.00) and minimum bid increments ($35,000.00), and the method and deadlines for interested parties to timely qualify to bid. The terms are intended to maximize the purchase price for the estate and balanced to avoid chilling the bids.

19. I propose that the Marshalls be the stalking horse bidder for the sale of the Assets. As set forth in the bid procedures and the attached Purchase Agreement, in the event the Marshalls are not

the winning bidder the Marshalls will be paid a break-up fee of $35,000.00 (7% of the stalking horse purchase price). This breakup fee was negotiated with the Marshalls and reflects the reasonable expense and risk incurred by the Marshalls taking the lead in connection with the proposed sale. I have determined this condition is an appropriate term of the proposed sale and will not chill bidding.

20. The Assets are not subject to any known secured claims except for the loan extended post-petition by the Marshalls for temporary operation of the business [ECF No. 53]. I have no objection to the Marshall's secured claim, and more importantly the Marshalls have indicated they fully support and consent to the proposed sale.

21. I have concluded that the proposed sale price and other terms for the sale of the Assets represent the best terms available for the sale of the Assets.

22. I have been informed that Edwin G. Marshall was former Chairman and Chief Executive Officer for more than a decade, and Mrs. Marshall was the former Director of Operations for the company, and both became creditors following their separation from the company. I have been advised that neither of the Marshalls, however, have been a director or officer of the company, or involved in any respect in the management or operation of the company, for more than 18 months.

23. Negotiations have been at all times conducted at arms' length and in good faith, and there are no side agreements, arrangements, or understandings with the Marshalls or any other parties except as disclosed in this Motion, and no consideration is being paid for the Assets or in connection with the proposed sale other than as set forth in this Motion, so I believe the terms of the sale accomplish the appropriate objectives.

24. I am also requesting that any order approving the sale be effective immediately upon confirmation of the sale by auction because the value of the inventory is diminishing and the proposed sale may otherwise be lost.

Dated: June 28, 2018.

*Lenard E. Schwartzer*