MEYERS LAW GROUP, P.C.
MERLE C. MEYERS, ESQ., CA Bar. No. 66849
44 Montgomery Street, Suite 1010
San Francisco, CA 94104
Telephone: (415) 362-7500
Facsimile: (415) 362-7515
Email: mmeyers@meyerslawgroup.com

FENNEMORE CRAIG, P.C.
COURTNEY MILLER O'MARA, ESQ., NV Bar No. 10683
300 S. Fourth St., Ste. 1400
Las Vegas, NV 89101
Telephone: (702) 692-8000
Facsimile: (702) 692-8099
Email: comara@fclaw.com

Attorneys for EDWIN G. MARSHALL and
DR. JILL C. MARSHALL, Creditors

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>MEDIZONE INTERNATIONAL, INC.,<br><br>Debtor. | Case No. 18-12662-leb<br><br>Chapter 7<br><br>Date:   October 23, 2018<br>Time:  9:30 a.m.<br>Place:  U.S. Bankruptcy Court<br>         300 Las Vegas Blvd. So.<br>         Ctrm. 3<br>         Las Vegas, NV<br>Judge:  Hon. Laurel E. Babero |

**PETITIONERS' MOTION FOR ALLOWANCE OF**
**ADMINISTRATIVE EXPENSE CLAIM FOR REIMBURSEMENT**

Petitioners EDWIN G. MARSHALL and DR. JILL C. MARSHALL (the "Marshalls") hereby move the above-captioned Court (this "Motion") for an order confirming and allowing them an administrative expense claim herein in the amount of $32,035.00, pursuant to 11 U.S.C. §§ 503(b)(3)(A) and 503(b)(4), as reimbursement of actual and necessary expenses incurred by the Marshalls in their filing and prosecution of an involuntary petition against the debtor herein, MEDIZONE INTERNATIONAL, INC. (the "Debtor"), pursuant to 11 U.S.C. § 303. In support of

-1-
PETITIONERS' MOTION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM FOR REIMBURSEMENT
31496.DOC 20140

this Motion, the Marshalls respectfully represent as follow:

## I. STATEMENT OF FACTS

The record of the Court, together with the declarations of Edwin G. Marshall (the "Marshall Dec."), Courtney M. O'Mara (the "O'Mara Dec.") and Merle C. Meyers (the "Meyers Dec.") filed concurrently herewith, establish the following facts:

**A.  Background**

1. As of the date of the commencement of this chapter 7 case, May 8, 2018 (the "Voluntary Petition Date"), the Debtor was a public company with operations in Ontario, Canada. The Debtor developed disinfection solutions for use in hospitals, other healthcare facilities and other institutions. In particular, the Debtor developed and patented a disinfection system named AsepticSure® which utilizes hydrogen peroxide vapor and ozone in a process that achieves dramatic reductions of bacterial and viral pathogens.

2. The Marshalls are the former Chairman/C.E.O. and Director of Operations of the Debtor. The Marshalls retired from those positions in February 2017, and entered into separation agreements with the Debtor pursuant to which the Debtor modified existing unsecured promissory notes owing to the Marshalls in an aggregate amount in excess of $1,500,000, to require monthly payments. By early 2018, the notes were in substantial default for lack of monthly payments owed to the Marshalls.

3. Following the Marshalls' retirement, new management was hired by the Debtor: David A. Esposito became the Chairman, and David A. Dodd became the C.E.O. The president of the Debtor was Dr. Michael E. Shannon. Dr. Shannon has been employed by the Debtor since 2002 and is also the company's Chief Scientific Officer and its Director of Medical Affairs.

4. Dr. Shannon's curriculum vitae includes a long list of degrees, prestigious assignments and public service. He has been actively engaged in medical bio-oxidative ($O_3$) research (the basis of the Debtor's technology) since 1987 and was directly responsible for the first human clinical trial to have ever been approved in North America, which examined the efficacy of $O_3$ delivered via minor autohemotherapy in the treatment of AIDS. He was also responsible for several primate studies

1  utilizing $O_3$ involving scientists from various departments within the Canadian Federal Government, as well as senior investigators from the Debtor and Cornell University.

### B. Involuntary Chapter 11 Petition

5. The Marshalls' investigation of the Debtor's status, through conversations with its vendors, review of its public filings and conversations with its President, revealed that the Debtor was not paying its other debts as they became due, that the Debtor had essentially depleted its cash reserves to minimal amounts, and that the Debtor lacked the funds to keep key employees with the company, to pay required rent for its facilities, and to pay counsel to renew key patents through payment of annual fees. The Marshalls concluded that absent an immediate bankruptcy filing, the Debtor's remaining assets would be lost, to the detriment of all creditors.

6. Accordingly, based on the Debtor's defaults of payments owing under the Marshalls' promissory notes, together with the Debtor's general failure to pay other debts as they became due, the Marshalls, along with two other creditors, USHIO AMERICA, INC. and ENGINEERING CPR, INC., filed an involuntary chapter 11 petition (the "Chapter 11 Petition") initiating a chapter 11 case (the "Chapter 11 Case") on April 18, 2018, case no. 18-50412.

7. The Chapter 11 Petition was filed in the unofficial Northern division of the Court, based upon the Debtor's agent for service of process being a resident of Carson City, Nevada, within the Northern division.

8. Having filed the Chapter 11 Petition, the Marshalls, through their counsel, attempted to engage the Debtor's management, Messrs. Esposito and Dodd, in a discussion about reorganizing the Debtor in the Chapter 11 Case. The Marshalls offered to lend funds to the Debtor on a postpetition basis in order to fund limited operations of the Debtor while the Debtor reorganized. However, the Debtor's management refused any such discussions without explanation, and instead, on May 8, 2018, the Debtor filed its own chapter 7 petition.

9. On May 9, 2018, the Debtor filed an answer to the Chapter 11 Petition, opposing chapter 11 relief based on its chapter 7 filing the day before (docket no. 30 in the Chapter 11 Case).

10. With the commencement of the chapter 7 case, the Chapter 11 Petition became moot, and therefore, pursuant to a stipulation between the petitioners, including the Marshalls, and the

1 chapter 7 trustee, the Chapter 11 Case was dismissed by the Court by its order entered on July 16, 2018 (docket no. 35 in the Chapter 11 Case).

### C. The Chapter 7 Petition

11. As stated, on May 8, 2018, rather than litigate or consent to the involuntary Chapter 11 Petition, the Debtor filed a voluntary chapter 7 petition (the "Chapter 7 Petition") in the Southern division of this Court, commencing this case no. 18-12662 (the "Chapter 7 Case"). Lenard E. Schwartzer was appointed as the trustee (the "Trustee") of the Debtor's chapter 7 estate and continues to serve in that capacity.

12. Upon the Trustee's appointment, the Marshalls made the same postpetition lending offer to the Trustee as they had made to the Debtor's management. Unlike the Debtor's management, the Trustee recognized the benefit to the Debtor's estate in accepting the Marshalls' loan, while the Trustee prepared to sell the Debtor's business as a going concern.

13. Accordingly, on May 22, 2018, the Trustee filed the *Emergency Motion for Interim Order Authorizing Trustee to Obtain Post-Petition Financing (11 U.S.C. § 364)* (docket no. 24, the "Borrowing Motion"), and the Trustee filed the *Emergency Motion for Order Authorizing Trustee to Operate Debtor's Business (11 U.S.C. § 721)* (docket no. 26, the "Section 721 Motion"), to allow the Trustee to operate the Debtor's business for a limited period of time, and to borrow funds from the Marshalls for those operations. Both motions were granted by the Court, and the Marshalls advanced funds to the Trustee through August 31, 2018 upon an agreed budget.

14. In addition, the Marshalls entered into a purchase contract with the Trustee to acquire all of the chapter 7 estate's assets (other than avoidance claims) for the price of $500,000, subject to overbids and an auction. No overbids were made, and therefore on August 10, 2018, the Court entered an order approving the proposed purchase by the Marshalls, and that purchase was completed on August 31, 2018.

### D. Costs Incurred by the Marshalls

15. In order to commence and prosecute the Chapter 11 Case, the Marshalls retained experienced bankruptcy counsel, Meyers Law Group, P.C. ("MLG"), as well as local bankruptcy counsel, Fennemore Craig, P.C. ("FC"), and incurred and paid actual and necessary fees and

expenses billed by those firms, in a total amount of $32,035.00,[1] as supported by the Meyers Dec. and the O'Mara Dec. and the time sheets attached to those declarations. Of that amount, $28,705.00 in fees was paid to MLG, and $1,363.00 in fees was paid to FC.[2]

16. The fees requested in the Motion are based upon the customary compensation charged by comparably skilled practitioners in cases other than cases under the Bankruptcy Code.

17. The legal services provided by MLG and FC in connection with the Chapter 11 Case included the following

(a) Communicating with the Marshalls and other creditors regarding participation in signing and filing the Chapter 11 Petition;

(b) Preparing and filing the Chapter 11 Petition;

(c) Communicating with the Debtor's management and its counsel regarding the Chapter 11 Petition, including proposed postpetition lending by the Marshalls;

(d) Conferring with the Marshalls regarding ongoing operations and personnel of the Debtor;

(e) Reviewing the Debtor's various filings in connection with the Chapter 11 Petition and subsequent voluntary Chapter 7 Case;

(f) Communicating and coordinating with the Trustee regarding the stipulated dismissal of the Chapter 11 Petition; and

(g) Preparing this Motion for reimbursement of fees and expenses incurred by the Marshalls in connection with the Chapter 11 Petition.

## II. LEGAL DISCUSSION

Based on the facts set forth above and discussion below, the Marshalls respectfully submit that they should be allowed an administrative expense claim against the Debtor's estate for reimbursement of the fees and expenses incurred and paid by them in filing and prosecuting the Chapter 11 Petition.

---

[1] This amount is comprised of $30,068.00 in attorneys' fees paid to MLG and FC, and $1,967.00 in costs.

[2] Concurrently, the Marshalls have filed a separate motion seeking reimbursement of attorneys' fees and costs incurred in making loans to the Trustee on a postpetition basis, pursuant to the underlying loan agreement between the Trustee and the Marshalls. None of the fees or costs identified in either motion duplicate any fees or costs sought in the other motion.

### A.     The Marshalls Are Entitled To an Administrative Expense Claim.

Section 503(b)(3) of the Bankruptcy Code authorizes petitioning creditors to obtain an administrative expense claim for expenses incurred in connection with the filing of an involuntary petition under Section 303 of the Bankruptcy Code. 11 U.S.C. § 503(b)(3). Specifically, Section 503(b)(3)(A) provides, in relevant part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including – . . .
>
>     (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by –
>
>         (A) a creditor that files a petition under section 303 of this title; . . .

11 U.S.C. § 503(b)(3)(A).

Additionally, Section 503(b)(4) of the Bankruptcy Code authorizes an administrative expense claim in favor of a petitioning creditor for attorneys' fees and costs incurred in connection with the involuntary petition. 11 U.S.C. § 503(b)(4). As stated in Section 503(b)(4), administrative expense treatment is allowed for:

>     (4) reasonable compensation for professional services rendered by an attorney or accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

11 U.S.C. § 503(b)(4).

"The purpose of §§ 503(b)(3)(A) and 503(b)(4) is to reimburse petitioning creditors for the costs associated with successfully filing and prosecuting an involuntary petition – a valuable service that brings the debtor into court so that its assets can be equitably marshaled before they are squandered." *In re Key Auto Liquidation Ctr., Inc.*, 384 B.R. 599, 604 (Bankr. M.D.Fla. 2008). A petitioning creditor may be awarded expenses pursuant to Sections 503(b)(3)(A) and 503(b)(4) even where the debtor subsequently files a voluntary petition and the involuntary petition is rendered moot. *In re Crazy Eddie, Inc.*, 120 B.R. 273 (Bankr. S.D.N.Y. 1990) (absence of an order for relief based on the involuntary petition does not preclude compensation under §§ 503(b)(3)(A) and (b)(4)).

While generally the entry of an order for relief is the cut-off point for administrative expenses

under §§ 503(b)(3)(A) and (b)(4), postpetition fees for time expended attempting to reach a settlement of the involuntary petition may be allowed where, "Disallowing such fees would discourage settlements, which is inconsistent with public policy because a post-petition settlement can conserve judicial resources by obviating the need for deciding the merits of the involuntary petition while still achieving the results the Code is intended to accomplish." *Key Auto Liquidation Ctr., Inc.*, *supra*, at 607.

Here, allowing the Marshalls an administrative expense claim for their attorneys' fees and costs associated with the Chapter 11 Case is appropriate under Sections 503(b)(3)(A) and (b)(4). Prompting the Chapter 11 Petition was the fact that the Debtor was not only in default on the promissory notes owing to the Marshalls, but also generally failing to pay its debts as they became due to other creditors, thus warranting the filing of the Chapter 11 Petition. As the lead petitioning creditors, the Marshalls were instrumental in bringing the Debtor before this Court to maximize the value of the estate's assets for the benefit of all creditors in the subsequent Chapter 7 Case, which was filed by the Debtor as a response to the Chapter 11 Petition being filed in the first instance.

Had the Chapter 11 Petition not been filed, there likely would have been a squandering of the Debtor's remaining assets, through a cessation of operations, loss of patents (through expiration of renewal deadlines) and loss of critical employees, including the co-founder of the Debtor's technology. Instead, with the Marshalls' initiation of bankruptcy proceedings of the Debtor (the Chapter 11 Petition that prompted the Chapter 7 Petition), the remaining assets of the Debtor were preserved and sold for the benefit of creditors.

Therefore, consistent with the purpose of, and public policy behind, Sections 503(b)(3)(A) and (b)(4), the Marshalls should be allowed an administrative expense claim for the fees and costs incurred by them with respect to the Chapter 11 Petition, including services rendered to conclude the Chapter 11 Petition through dismissal, and to prepare and prosecute this Motion.

### B.  The Requested Fees and Costs are Reasonable.

Amounts awarded under Section 504(b)(4) for compensation of a petitioning creditor's professionals "are subject to a reasonableness review mirroring that of § 330 [of the Bankruptcy Code]." *Key Auto Liquidation Ctr., Inc.*, *supra,* at 606 (citing *In re Stoecker*, 128 B.R. 205, 209

(Bankr. N.D.Ill. 1991)). "Applicants under section 503(b)(3) and (4) have the burden of establishing their entitlement to an award by a preponderance of the evidence." *In re Hanson Industries, Inc.*, 90 B.R. 405, 409 (Bankr. D.Minn. 1988). The scope of attorney services which are compensable under Section 503(b)(4) includes "preparing and filing the involuntary petition, contacting other creditors to join in the petition, legal and factual research regarding the grounds for filing the case, and litigating whether an order for relief should be entered." *Key Auto Liquidation Ctr., Inc.*, *supra,* at 605 – 606 (citation omitted). "Additionally, many courts have allowed compensation to cover litigation costs resulting from a contested (or otherwise problematic) involuntary petition." *In re Hovdebray Enterprises*, 499 B.R. 333, 337 (Bankr. D.Minn. 2013).

In this case, the legal services for which the Marshalls seek reimbursement are properly compensable under Section 503(b)(4), as the scope of services provided by MLG and FC, as identified in this Motion, narrowly relate to the Chapter 11 Case. The Marshalls have satisfied their evidentiary burden, as the time records of both MLG and FC establish that their respective services relate to preparing and filing the Chapter 11 Petition, contacting other creditors to join in the petition, performing factual research regarding the grounds for filing the case, complying with local Court rules, reviewing the Debtor's answer to the Chapter 11 Petition, obtaining the stipulated dismissal of the Chapter 11 Petition, and preparing this Motion for reimbursement (as would be permitted in relation to a Section 330 application for compensation). Accordingly, the Marshalls should be allowed an administrative expense claim in the requested amount against the Debtor's estate.

### III. CONCLUSION

Based upon all of the foregoing reasons, the Marshalls respectfully request that this Motion be granted, and that the Court enter an order confirming and allowing them an administrative expense claim against the Debtor's estate in the total amount of $32,035.00, pursuant to 11 U.S.C. §§ 503(b)(3)(A) and 503(b)(4).

DATED: September 19, 2018

MEYERS LAW GROUP, P.C.

By   /s/ Merle C. Meyers
    Merle C. Meyers, Esq.
    Attorneys for Edwin G. and Jill C. Marshall, Creditors