MEYERS LAW GROUP, P.C.
MERLE C. MEYERS, ESQ., CA Bar. No. 66849
44 Montgomery Street, Suite 1010
San Francisco, CA 94104
Telephone: (415) 362-7500
Facsimile: (415) 362-7515
Email: mmeyers@meyerslawgroup.com

FENNEMORE CRAIG, P.C.
COURTNEY MILLER O'MARA, ESQ., NV Bar No. 10683
300 S. Fourth St., Ste. 1400
Las Vegas, NV 89101
Telephone: (702) 692-8000
Facsimile: (702) 692-8099
Email: comara@fclaw.com

Attorneys for EDWIN G. MARSHALL and
DR. JILL C. MARSHALL, Creditors

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>MEDIZONE INTERNATIONAL, INC.,<br><br>Debtor. | Case No. 18-12662-leb<br><br>Chapter 7<br><br>Date:   October 23, 2018<br>Time:   9:30 a.m.<br>Place:  U.S. Bankruptcy Court<br>             300 Las Vegas Blvd. So.<br>             Ctrm. 3<br>             Las Vegas, NV<br>Judge:  Hon. Laurel E. Babero |

**POSTPETITION LENDER'S MOTION FOR REIMBURSEMENT OF FEES
AND EXPENSES INCURRED UNDER LOAN AGREEMENT WITH TRUSTEE**

Creditors EDWIN G. MARSHALL and DR. JILL C. MARSHALL (the "Marshalls") hereby move the above-entitled Court for approval of fees and expenses incurred by the Marshalls, as postpetition lenders in this chapter 7 case, pursuant to 11 U.S.C. § 506(b) and the terms of the postpetition *Loan Agreement* dated May 17, 2018 (the "Loan Agreement") by and between the Marshalls and Lenard E. Schwartzer, as trustee herein (the "Trustee"). The Loan Agreement was approved on a final basis by the Court in its *Final Order Granting Emergency Motion for Interim Order Authorizing Trustee to Obtain Post-Petition Financing (11 U.S.C. § 364)* (the "Borrowing

Order," docket no. 53).

This Motion is based upon (a) the fees and costs that the Marshalls have paid to their counsel, Meyers Law Group, P.C. ("MLG"), with respect to the postpetition loan, and (b) the Marshalls' out-of-pocket expenses in administering the postpetition loan. The Motion is supported by the declarations of Merle C. Meyers (the "Meyers Declaration") and Edwin G. Marshall (the "Marshall Declaration") filed concurrently herewith.

By way of the Motion, the Marshalls seek approval of compensation in the total amount of $49,099.77 (the "Requested Reimbursement"), which is comprised of $45,950.00 in MLG fees,[1] and $3,149.77[2] for costs of MLG and Mr. Marshall. Payment of the Requested Reimbursement from the chapter 7 estate herein is provided for under the terms of the Loan Agreement.

## I.    STATEMENT OF FACTS

The record of this Court, together with the Meyers Declaration and the Marshall Declaration, establish the following facts and circumstances:

**A.    Prior Chapter 11 Case**

1.    As of the date of the commencement of this chapter 7 case, Medizone International, Inc., the debtor herein (the "Debtor"), was a public company with operations in Ontario, Canada. The Debtor developed disinfection solutions for use in hospitals, other healthcare facilities and other institutions. In particular, the Debtor developed and patented a disinfection system named AsepticSure®, which utilizes hydrogen peroxide vapor and ozone in a process that achieves dramatic reductions of bacterial and viral pathogens.

2.    The Marshalls are the former Chairman/C.E.O. and Director of Operations, respectively, of the Debtor. The Marshalls retired from those positions in February 2017, entering into separation agreements with the Debtor, pursuant to which the Marshalls hold unsecured promissory notes issued by the Debtor in an aggregate amount in excess of $1,500,000. The notes were in substantial default prepetition, for lack of monthly payments owed to the Marshalls in 2017

---

[1] This amount includes an estimate of $3,250.00 in fees for attorney travel, preparation, and appearance at the hearing on this Motion. The amount also includes a voluntary reduction of $5,000.00 as a matter of billing discretion, as described below.

[2] This amount includes an estimate of $720.00 for travel and related costs to appear at the hearing on this Motion.

and 2018.

3. Based on the Debtor's defaults to the Marshalls and others, the Marshalls, along with three other creditors, filed an involuntary chapter 11 petition (as amended, the "Chapter 11 Petition") initiating a chapter 11 case in April 2018. On May 8, 2018, the Debtor filed a voluntary chapter 7 petition (the "Chapter 7 Petition") in this Court, commencing this case no. 18-12662. The Trustee was appointed as trustee of the Debtor's chapter 7 estate and continues to serve in that capacity.

4. Given the filing of the Chapter 7 Petition, the Marshalls, the other petitioning creditors, and the Trustee, entered into a stipulation for the dismissal of the chapter 11 case, and that case was dismissed accordingly by the Court on July 16, 2018. Separately, the Marshalls have filed a motion seeking approval of an administrative claim for reimbursement of their expenses incurred in connection with the Chapter 11 Case, pursuant to 11 U.S.C. § 503(b)(3)(A).

**B.    Negotiation and Approval of Postpetition Financing**

5. During the pendency of the involuntary chapter 11 petition, the Marshalls had offered to the current management of the Debtor that the Marshalls would provide postpetition financing in order to sustain the Debtor's operations while a sale or reorganization was attempted. The Debtor's management refused the Marshalls' efforts and offer without explanation, and instead filed the Debtor's chapter 7 petition.

6. Therefore, upon the appointment of the Trustee, the Marshalls approached the Trustee and made the same offer, to finance the Debtor's operations for a short term, under 11 U.S.C. § 721, while the Trustee attempted to sell the Debtor's assets or the Marshalls attempted a reorganization (through a converted case). The Trustee agreed to the Marshalls' proposed postpetition financing, and to operate the Debtor's business for a short term under Section 721, subject to Court approval.

7. The Trustee and the Marshalls entered into the Loan Agreement, along with supporting documents, as of May 17, 2018, subject to Court approval. Among other terms, the Loan Agreement provided for:

    A.    Advances by the Marshalls of up to $200,000 in the aggregate, in accordance with an agreed-upon budget, as modified by mutual consent (the "Loan");

    B.    Interest accruing on the Loan at the rate of 10% per annum;

       C.     A lien on all of the estate's assets, other than avoidance claims, to secure repayment of the Loan; and

       D.     Repayment of the Loan no later than upon sale of estate assets or September 30, 2018, whichever occurred first.

8.     The Loan Agreement also provided for the estate's reimbursement of all fees and expenses, including legal fees and costs, incurred by the Marshalls in connection with the Loan Agreement, the Loan and the Trustee's Section 721 motion to operate the Debtor's business. In particular, Section 5(a) of the Loan Agreement provided as follows:

> All reasonable attorneys' fees and costs incurred by Lenders in documenting, negotiating, monitoring and enforcing this Agreement (including without limitation (i) obtaining Bankruptcy Court approval of the Loan and of the Section 721 Motion, and (ii) requesting Bankruptcy Court approval of such fees and costs) shall be deemed Advances due on the Due Date, *provided* that such fees and costs shall be paid by Borrower within fifteen (15) days following entry of an order of the Bankruptcy Court approving such fees and expenses pursuant to Section 506(b) of the Bankruptcy Code. Interest shall continue to accrue on account of fees, to the extent approved by the Bankruptcy Court, from the Due Date until paid.

9.     On May 22, 2018, the Trustee filed his *Emergency Motion for Interim Order Authorizing Trustee to Obtain Post-Petition Financing (11 U.S.C. § 364)* (the "Section 364 Motion," docket no. 24) and his *Emergency Motion for Order Authorizing Trustee to Operate Debtor's Business (11 U.S.C. § 721)* (the "Section 721 Motion," docket no. 26).

10.     On May 31, 2018, the Court entered an order granting the Section 721 Motion (docket no. 36), and on June 1, 2018, its order granting the Section 364 Motion on an interim basis (docket no. 40). On June 15, 2018, the Court entered an order granting the Section 364 Motion on a final basis (docket no. 53).

11.     From June 1, 2018 to August 31, 2018, the Marshalls made all advances requested by the Trustee in order to operate the Debtor's business.

**C.    Sale Process**

12.     Concurrently with negotiating the Loan Agreement, the Trustee and the Marshalls entered into a *Purchase And Sale Agreement* (the "PSA") dated May 17, 2018, under which the Marshalls (or their nominee) agreed to purchase the assets of the estate (other than avoidance claims)

for the purchase price of $500,000, subject to Court approval and overbids.

13.  On June 29, 2018 (docket no. 60), the Trustee filed a motion seeking approval of the PSA and the sale process, including an overbid auction, as set forth in the PSA. That motion was granted by the Court pursuant to its order dated July 26, 2018 (docket no. 81), and an auction was scheduled for August 7, 2018.

14.  No party qualified itself as an overbidder, and no party appeared at the scheduled auction. Accordingly, on August 10, 2018, the Court entered an order approving the Trustee's sale of all of the estate's assets to the Marshalls under the terms of the PSA (docket no. 85), for the purchase price of $500,000.

15.  The PSA sale was completed on August 31, 2018, with the Marshalls' full payment of the purchase price, less the amount necessary to repay the Loan, including interest, other charges and estimated fees and expenses, pursuant to Section 3.2 of the PSA, which provided that the purchase price was to be paid by the Marshalls to the Trustee "at Closing in cash or immediately available funds, less the full amount of all principal, interest, fees and other charges owing as of the Closing under the Loan, which shall be deducted from the Purchase Price."

16.  The payoff amount due from the estate to the Marshalls in satisfaction of the Loan was $151,840.09 (the "Payoff Amount") as of August 31, 2018. Based on the Payoff Amount, the Marshalls were obligated to pay to the Trustee the amount of $348,159.91, less reimbursable fees and costs.

17.  In order to account for fees and expenses owing to the Marshalls under the Loan Agreement, the parties agreed that of the $348,159.91 due from the Marshalls, $50,000.00, as a rough estimate of reimbursements owing, would be deposited into the trust account of the Marshalls' counsel, MLG, pending resolution of this Motion. That deposit was made, and those funds of $50,000.00 (the "Deposit") are presently held in the MLG trust account, pending determination of the reimbursable amount. The parties have agreed that to the extent that the allowed reimbursements differ from the estimated amount, the parties will reconcile the Deposit, either by payment to the Marshalls (if allowed reimbursements exceed the estimated amount) or to the Trustee (if the estimated amount exceeds the allowed reimbursements). The Deposit, or its remaining balance, will

then be paid over to the Marshalls or their assignee.

**D.**    **Description of Reimbursable Fees and Services of MLG**

18.    Consistent with the terms of the Loan Agreement, the Requested Reimbursement includes MLG's fees for services that MLG provided in connection with the Loan, the Section 364 Motion and the Section 721 Motion. In particular, MLG represented the Marshalls in providing the following services, among others:

   A.    Negotiating the terms of the Loan and the attached budget with the Trustee and his counsel;

   B.    Conferring with the Trustee with regard to limited operation of the Debtor's business under Section 721 of the Bankruptcy Code;

   C.    Drafting and negotiating the terms and language of the Loan Agreement, together with an accompanying promissory note and security agreement;

   D.    Reviewing and conferring with clients and counsel regarding the extent and efficacy of collateral, including patents and patent applications;

   E.    Reviewing, and proposing modifications of, the Section 364 Motion and the Section 721 Motion;

   F.    Appearing at the initial and final hearings of the Section 364 Motion and the Section 721 Motion;

   G.    Reviewing, and proposing modifications of, the forms of order approving the two motions;

   H.    Conferring and resolving issues arising from time to time regarding funding issues, including issues as to insurance, salaries, special counsel retentions and retainers, and recovery of equipment from North Carolina;

   I.    Conferring with two law firms proposed to act as special counsel to the Trustee, in order to determine the extent of services and amount of retainers to be advanced; and

   J.    Calculating payoff amounts owing under the Loan Agreement.

19.    The Marshalls seek reimbursement of MLG's fees for such services in the amount of

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

$39,225.00, based on the time entries in the time sheets attached as Exhibit "A" to the Meyers Declaration and net of the $5,000.00 discretionary reduction described below, as follows:

| Timekeeper | Hours | Rate | Amount |
|---|---|---|---|
| Merle C. Meyers | 67.40 | $650.00 | $43,810.00 |
| Merle C. Meyers | 0.50 | $0.00 | $0.00 |
| Kathy Quon Bryant | 0.20 | $500.00 | $100.00 |
| Michele Thompson | 0.70 | $450.00 | $315.00 |
| Discretionary Reduction: | | | (5,000.00) |
| **Total** | **68.80** | | **$39,225.00** |

20. In addition, consistent with the terms of the Loan Agreement, the Requested Reimbursement includes MLG's fees in the amount of $3,475.00 for services that MLG provided in preparing this Motion, and its estimated fees for attending the hearing of this Motion, in the amount of $3,250.00, based on the time entries found in the time sheets attached as Exhibit "B" to the Meyers Declaration, as follows:

| Timekeeper | Hours | Rate | Amount |
|---|---|---|---|
| Merle C. Meyers | 3.50 | $650.00 | $2,275.00 |
| Merle C. Meyers (estimated) | 5.0 | $650.00 | $3,250.00 |
| Kathy Quon Bryant | 2.40 | $500.00 | $1,200.00 |
| **Total** | | | **$6,725.00** |

21. As indicated in the foregoing calculations, the Marshalls have chosen to reduce the amount requested for reimbursement by $5,000.00, or roughly 10% of total fees, in recognition of the economies of the chapter 7 estate herein, as well as any amount by which MLG's hourly rates may exceed local hourly rates.

**E.    Description of Reimbursable Expenses**

22. Also consistent with the terms of the Loan Agreement, the Requested Reimbursement includes MLG's and the Marshalls' costs incurred in connection with the Loan, the Section 364 Motion and the Section 721 Motion. Those costs are in the total amount of $3,149.77, were actually and necessarily incurred by MLG and the Marshalls in such matters, and are listed below categorically at actual cost. As indicated below, those costs include MLG's estimated costs in traveling to, and attending, the hearing of this Motion, based on actual experience with respect to prior hearings. The costs are supported by the Meyers Declaration and the Marshall Declaration filed

concurrently herewith, and consist, by category, as follows:

| EXPENSE | AMOUNT |
|---|---|
| Filing Fee | $250.00 |
| Air Fare (MLG) | $878.80 |
| Air Fare (Marshalls) | $354.40 |
| Hotel (MLG) | $169.81 |
| Hotel (Marshalls) | $202.54 |
| Meals (MLG) | $47.10 |
| Meals (Marshalls) | $105.77 |
| Mileage | $60.00 |
| Parking Lot Fees | $108.00 |
| Toll Charges | $12.00 |
| Taxi | $41.21 |
| Other Transportation | $200.14 |
| **Subtotal Costs** | **$2,429.77** |
| **Estimated Costs for Hearing** | **$720.00** |
| **Total Costs** | **$3,149.77** |

## II. PAYMENT OF REQUESTED COMPENSATION

Applicable law supports approval of the Requested Reimbursement, as follows:

### A. Reasonable Fees and Costs Recoverable

Section 506(b) of the Bankruptcy Code provides that,

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b). "[W]hen fees are provided for in the underlying agreement, and when the creditor is oversecured, allowance of the attorney's fees is mandatory." *Dalessio v. Pauchon (In re Dalessio)*, 74 B.R. 721, 723 (9th Cir. B.A.P. 1987).

Allowance of attorney's fees under Section 506(b) is limited by the reasonableness requirement in Section 506(b). *Id.* at 723. As observed by the Bankruptcy Appellate Panel for the Ninth Circuit:

> Reasonableness embodies a range of human conduct. The key determinant is whether the creditor incurred expenses and fees that fall within the scope of the fees provision in the agreement, and took the kinds of actions that similarly

situated creditors might reasonably conclude should be taken, or whether such actions and fees were so clearly outside the range as to be deemed unreasonable.

*Id.* "The attorney applying for fees bears the burden of proving the reasonableness of those fees, which can only be done by presentation of carefully detailed applications and supporting documentation." *Id.* at 724. (citation omitted).

"In the Ninth Circuit, the customary method for determining the reasonableness of attorney's fees is the 'lodestar' calculation. . . . Several courts have also applied the lodestar method in determining the reasonableness of fees requested under § 506(b)." *In re Parreira*, 464 B.R. 410, 416 (Bankr. E.D.Cal. 2012) (citations omitted). The lodestar is calculated by multiplying the number of hours expended by a reasonable hourly rate. *Id.* "A reasonable hourly rate is the prevailing market rate in the community for similar services by lawyers of reasonably comparable skills, expertise and reputation." *In re Robertson Companies, Inc.*, 123 B.R. 616, 619 (Bankr. N.D. 1990) (citing *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984)).

Further, non-local attorney hourly rates may be approved where limiting an applicant to the local hourly rate is "unduly parochial particularly in this age of national and regional law firms working on larger more complex bankruptcy cases of more than local import." *Id.* at 619 (Minneapolis law firm representing large chapter 11 debtor with business interests spanning several states not limited to hourly rate of law firms in North Dakota community where debtor located). It is also noted that the Marshalls have voluntarily reduced the requested reimbursement amount by $5,000.00 from the fees actually paid by them to MLG, in recognition of the economies of the estate herein, as well as any amount by which MLG's hourly rates may exceed local hourly rates.

### B. Requested Reimbursements Here are Reasonable

Here, the Applicant has satisfied the applicable Section 506(b) standard.

#### 1. Recoverable Under Loan Agreement

First, it is undisputed that the Marshalls were oversecured creditors where the value of their collateral ($500,000, as reflected by the Purchase Price) exceeded the amount of the Loan (up to $200,000). Second, Section 5(a) of the Loan Agreement explicitly provides for the payment of the

Marshalls' attorneys' fees and costs in connection with the Loan, the Section 721 Motion and this Motion.

Moreover, the Applicant has met its burden demonstrating that the Requested Reimbursement is reasonable within the meaning of Section 506(b). In addition to the narrative above, the Marshalls have presented MLG's time records, attached as Exhibits "A" and "B" to the Meyers Declaration, which sufficiently detail the legal work that was performed for the Marshalls as postpetition lenders to the estate in documenting, negotiating, monitoring and enforcing the Loan Agreement; obtaining Court approval of the Loan Agreement and the Section 721 Motion; and services associated with the preparation and prosecution of this Motion. Further, this Motion adequately describes the reimbursable costs incurred by the Marshalls, supported by the Meyers Declaration and the Marshall Declaration.

### 2. Hourly Rates

Second, MLG's hourly rate is reasonable and should be approved given the circumstances of this case. As the attorneys' background information below evidences, MLG is a very experienced commercial insolvency law firm located in San Francisco, California, well-suited to representation of the Marshalls in their role as postpetition secured lenders in this case. As attested to in the Meyers Declaration, MLG's hourly rates are equal to or lower than the rates of comparable counsel in the San Francisco Bay Area, where the Marshalls reside, and are regularly approved by Bankruptcy Courts in the Northern District of California in cases in which MLG acts as estate professionals, either as counsel for the debtor or counsel for a creditors' committee. As stated in *In re Robertson Companies, Inc.*, 123 B.R. *supra* at 619, non-local attorneys, when their retention is justified, should be compensated at rates that are reasonable in their own community. Here, MLG was retained because the Marshalls live in the San Francisco Bay Area, where MLG's office is located, and it is reasonable for the Marshalls to have hired counsel where they can meet and confer conveniently.

### 3. Travel Time

Lastly, the Marshalls are aware of this Court's general rule regarding time billed for travel time, as set forth in *In re Ginji Corporation*, 117 B.R. 983, 994-995 (Bankr. Nev. 1990), to wit, that "[O]ut of state travel time will be allowed for necessary attorneys at half the usual rate," and whereas

-10-
POSTPETITION LENDER'S MOTION FOR REIMBURSEMENT OF FEES
AND EXPENSES INCURRED UNDER LOAN AGREEMENT WITH TRUSTEE
31510.DOC 20140

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

MLG has not billed travel time at 50% of normal rates, it has effectively reduced its billings for travel time by approximately that measure: As attested to in the Meyers Declaration, MLG bills for travel time that is not available for other legal services, such as travel to an airport, waiting for baggage, flight delays, etc., but does not bill for travel time when other services, for other clients, can be performed, such as seated on an airplane in flight. This results in billings that are often less than 50% of normal hourly rates of the full time in travel. Thus, for example, for travel of Merle Meyers to and from Las Vegas on May 30, 2018, MLG charged 2.7 hours at Mr. Meyers' full rate. That amount of time did not include the time of the actual flights, which was roughly 3.2 hours roundtrip (scheduled 8:45 a.m. to 10:21 a.m., 4:41 p.m. to 6:17 p.m.), and was thus less than 50% of the hourly rate for all travel time.[3] The Marshalls respectfully submit that such standard billing practice of MLG should be permitted here, as an approximation of the 50% rule.

### III. TIME CALCULATIONS

The task-by-task billing and timing of services provided by MLG are set forth in detail in Exhibit "A" to the Meyers Declaration. Services and time spent, sorted by attorney, are as follows:

| Timekeeper | Hours | Rate | Amount |
| --- | --- | --- | --- |
| Merle C. Meyers | 0.50 | $ 0.00 | $0.00 |
| Merle C. Meyers | 70.90 | $650.00 | $46,085.00 |
| Kathy Quon Bryant | 2.60 | $500.00 | $1,300.00 |
| Michele Thompson | 0.70 | $450.00 | $315.00 |
| **TOTAL(ACTUAL)** | | | **$47,700.00** |
| Merle C. Meyers (estimated) | 5.0 | $650.00 | $3,250.00 |
| **TOTAL (Including Estimate)** | | | **$50,950.00** |

The fees requested herein are based upon the customary compensation charged by comparably skilled practitioners in cases other than cases under the Bankruptcy Code.

MLG has exercised its customary billing practices and judgment in calculating the time and fees described above, and in some instances, has not charged for services, either by eliminating billing for such services altogether or by entering such billing at a rate of $0.00 per hour.

### IV. ATTORNEYS' BACKGROUNDS

---

[3] In other matters, in which air flight time is greater, the effective percentage of hourly rates is even lower.

-11-
POSTPETITION LENDER'S MOTION FOR REIMBURSEMENT OF FEES
AND EXPENSES INCURRED UNDER LOAN AGREEMENT WITH TRUSTEE
31510.DOC 20140

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

MLG is a firm specializing in bankruptcy law and other creditor-debtor matters. The following is a brief description of the primary attorneys within MLG for whom services are included in this Motion:

**Merle C. Meyers** is a principal of Meyers Law Group, P.C., and received his J.D. from the University of California at Davis in 1975, where he was Articles Editor of the U.C. Davis Law Review. Since 1978, Mr. Meyers has specialized in the area of bankruptcy law, with an emphasis on chapter 11 debtor representation. He has handled many significant chapter 11 cases filed in the San Francisco Bay Area, as either the debtor's or equity holders' counsel, including Hexcel Corporation, John Breuner Company, Weibel Vineyards, Ironstone Group, VEC Farms, LLC, Unicom Computer Corporation, Techmart Limited, Clement Carinalli, StreamLogic Corporation, Gabriel Technologies and KineMed, Inc., as well as major cases elsewhere, including the UpRight, Inc. chapter 11 case in Fresno, California, the Michael Hat Farming Company chapter 11 case in Sacramento, California, and the Silver Cinemas and Landmark Theatre chapter 11 cases in Delaware. He is regularly listed in editions of *The Best Lawyers In America*, published by Woodward/White, and was named by that publication the Best Lawyer of the Year in San Francisco in the category of Bankruptcy Litigation in 2014-2015. Mr. Meyers has also been listed as a "Super Lawyer" in every year of that designation's publication by Superlawyers.com.

**Kathy Quon Bryant** is a senior associate of Meyers Law Group, P.C., and a member of the California State Bar since 2001. Ms. Quon Bryant received her B.A. in economics, *magna cum laude*, from Boston University, and her J.D. from the University of San Francisco, where she was a member of the Law Review and received CALI Awards for Excellence in Legal Writing, Telecommunications and Venture Capital Law. Before joining the firm, she was employed by another bankruptcy law firm since 2001, at which firm Ms. Quon Bryant regularly represented chapter 7 trustees in bankruptcy cases in the Bay Area. Ms. Quon Bryant also represents commercial chapter 11 debtors, secured and unsecured creditors, and parties involved in adversary proceedings.

**Michele Thompson** is an associate of Meyers Law Group, P.C., and a member of the California bar since 2006. Ms. Thompson received her B.A. in Journalism from California State University, San Francisco in 2002, and her J.D. from Golden Gate University in 2005, where she was

an editor of the Golden Gate University Law Review and received Witkin and CALI awards for Academic Excellence. Since joining the firm in 2008, Ms. Thompson has handled a wide variety of bankruptcy and restructuring matters, including the representation of Chapter 11 corporate Debtor and high-net-worth individuals, Chapter 7 trustees, creditors' committees, and a range of creditors and equity holders in various proceedings, as well as related adversary proceedings and out-of-court workouts.

### V. CONCLUSION

WHEREFORE, the Marshalls respectfully request entry of an order granting this Motion and the following relief pursuant to the provisions of Section 506(b) of the Bankruptcy Code:

A. Approving the Requested Reimbursement in the amount requested herein, $49,099.77, as the Marshalls' reimbursable fees and expenses under the terms of the Loan Agreement;

B. Authorizing MLG to release $49,099.77 of the $50,000.00 deposit held in MLG's trust account to the Marshalls or at their direction, in satisfaction of the Requested Reimbursement;

C. Authorizing MLG to pay the balance of the $50,000.00 deposit, in the amount of $900.23, to the Trustee in final payment of the asset purchase price; and

D. Such other and further relief as this Court deems proper.

DATED: September 19, 2018

MEYERS LAW GROUP, P.C.

By  /s/ Merle C. Meyers
Merle C. Meyers, Esq.
Attorneys for Edwin G. Marshall and
Dr. Jill C. Marshall, Creditors