Jason A. Imes, Esq., NV Bar No. 7030
Schwartzer & McPherson Law Firm
2850 South Jones Blvd., Suite 1
Las Vegas NV  89146-5308
Telephone:     (702) 228-7590
Facsimile:      (702) 892-0122
E-Mail:          bkfilings@s-mlaw.com
*Attorneys for Lenard E. Schwartzer, Trustee*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>MEDIZONE INTERNATIONAL, INC.,<br><br>Debtor. | Case No. BK-S-18-12662-ABL<br><br>Chapter 7<br><br>**DECLARATION OF LENARD E. SCHWARTZER SUPPORTING MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT (FRBP 9019)**<br><br>Hearing Date:    March 21, 2019<br>Hearing Time:    11:00 a.m. |

I, LENARD E. SCHWARTZER, do declare the following under penalty of perjury:

1. I am over the age of eighteen and I am competent to make this Declaration. I have personal knowledge of the facts in this matter, except where stated upon information and belief.

2. I am the duly appointed Chapter 7 Panel Trustee for the bankruptcy estate of Medizone International, Inc., and I make this Declaration in support of my *Motion for Approval of Settlement Agreement* (the "Motion").

3. I am seeking approval of a Settlement Agreement I have negotiated with EDWIN G. MARSHALL, JILL C. MARSHALL (collectively the "Marshalls"), and ASEPTICSURE SCIENTIFIC, LLC ("ASL") purchasers of substantially all of the assets of this bankruptcy estate). The terms are set forth with more particularity in the Settlement Agreement attached to the Motion as **Exhibit "1."** In general terms, the Marshalls, ASL and I have agreed that ASL owns any claims, rights, causes of action, damages, liens and all other charges against all former officers, directors, representatives, agents, employees, counsel and other insiders of the Debtor (the

1  "Subject Claims"), and that ASL will assign such claims to the Marshalls to investigate and
2  pursue, and in the event of any recovery, and after payment of the Marshall's attorney's fees and
3  expenses, the net proceeds will be divided with 25% to me for the benefit of the bankruptcy estate,
4  and 75% to the Marshalls.

5    4.  On April 18, 2018, creditors Edwin G. Marshall and Dr. Jill C. Marshall
6  (collectively, the "Marshalls"), and creditors Ushio America, Inc. and Engineering CPR, Inc.
7  (together with the Marshalls, the "Petitioning Creditors"), filed an involuntary petition under
8  Chapter 11 the Bankruptcy Code against Debtor MEDIZONE INTERNATIONAL, INC. (the
9  "Debtor") in Reno, Nevada, thereby commencing bankruptcy case number 18-50412-GWZ (the
10  "Involuntary Chapter 11 Case").

11    5.  On May 8, 2018, the Debtor filed its voluntary petition pursuant to Chapter 7 of the
12  Bankruptcy Code in Las Vegas, Nevada, and I was appointed to administer the Chapter 7 estate.
13  The Involuntary Chapter 11 Case was subsequently dismissed.

14    6.  I was authorized to operate the business for approximately 90 days from June 1,
15  2018 through August 31, 2018 [ECF No. 36], and was authorized to borrow up to $200,000.00
16  from the Marshalls [ECF No. 40] to fund said operation pending sale of the estate's assets.

17    7.  As of August 31, 2018, I sold and transferred substantially all of the assets of the
18  estate to ASL as nominee of the Marshalls, for the sum of $500,000.00 pursuant to a Purchase and
19  Sale Agreement dated May 17, 2018 (the "PSA"), which was approved and authorized by the
20  Bankruptcy Court under its *Order Approving And Confirming Sale Of Estate Property Free And*
21  *Clear Of Any Interest*, entered on August 10, 2018 [ECF No. 85]. A copy of the PSA is attached
22  to the Motion as **Exhibit "2."**

23    8.  Pursuant to the PSA, the assets sold included all assets used for the operation of
24  Debtor's business, including but not limited to the intellectual property, real property, fixtures,
25  tangible and intangible personal property, inventory, goodwill, and other assets of the business
26  (the "Assets").
27  ///
28  ///

9. Pursuant to Section 1.1 of the PSA, the property of the estate transferred to ASL included "all of [the Trustee's] right, title and interest in and to all of the assets used by Debtor in connection with the operation of the [business of the Debtor]."

10. The bill of sale (the "Bill of Sale") executed by me and delivered to ASL as of August 31, 2018 included the following language identifying the Estate property transferred to ASL pursuant to the PSA, among other assets:

> All of the Estate's right, title, ownership and interest in and to claims, causes of action, damages, liens and all other charges against third parties, including without limitation any and all causes of action and claims against former officers and directors of [the Debtor].

11. Based on the PSA, the Bill of Sale and the Marshalls' recollection of the expressed intent of the parties to the PSA, ASL claims ownership of the Subject Claims, among other claims, rights and assets transferred by me to ASL.

12. I also claim ownership of the Subject Claims, contending that the PSA approved by the Bankruptcy Court did not provide for transfer of such claims to ASL, that the parties did not express any intention of transferring the ownership of the Subject Claims, and that the Bill of Sale erroneously identifies the Subject Claims among the transferred assets.

13. I have negotiated with the Marshalls and ASL to resolve our dispute as to the ownership of the Subject Claims, subject to Court approval, in accordance with the terms and conditions set forth in the Settlement Agreement attached to the Motion as **Exhibit "1."**

14. The Settlement Agreement confirms the Subject Claims were purchased from the bankruptcy estate and are now held by ASL. However, in light of ASL's present inability to fund the investigation of and, if appropriate, prosecution of the Subject Claims, ASL will transfer its ownership of the Subject Claims to the Marshalls. The Marshalls have indicated they are willing to accept such transfer, based on their agreement with their counsel with respect to the funding of such investigation and prosecution.

///

///

15. I have negotiated the Settlement Agreement with the Marshalls and ASL so that the Marshalls and ASL may fund the investigation of the Subject Claims, and potential related litigation, and the bankruptcy estate will share the net benefit from any recovery (25%) without incurring the expense of the investigation and litigation.

16. I believe the proposed terms of the Settlement Agreement are justified, and in my business judgment I have concluded this proposed compromise is in the best interest of the estate and creditors.

17. I believe that, if litigated, the Court would agree that the Subject Claims were not transferred to the Marshalls or ASL pursuant to the Purchase and Sale Agreement since those assets were never identified in the PSA (attached to the Motion as **Exhibit "2"**), those claims were never discussed in the Motion to approve the asset sale, and the Subject Claims are not "assets used by the Debtor connection with the operation of the [business of the Debtor]." Nevertheless, I recognize there is ambiguity in some of the settlement negotiation communications, and recognize the importance in this particular case of resolving this issue to clarify which party may pursue the Subject Claims.

18. After consideration of the economics of the situation, and evaluation of currently available information supporting the Subject Claims, I have concluded it is in the best interest of the estate to have the Marshalls and/or ASL fund the investigation and litigation of the Subject Claims rather than the bankruptcy estate. I have concluded it is in the best interests of the estate to avoid placing the entire expense and risk of investigation and litigation of the Subject Claims on the bankruptcy estate when other parties are motivated to fund and pursue such activity, while still retaining a potential benefit to the bankruptcy estate in the event of recovery.

19. I have not identified collection expense as a basis for proposing this Settlement Agreement with the Marshalls and ASL. I am not attempting to collect from the Marshalls or ASL. This Settlement Agreement resolves any ambiguity regarding ownership of the Subject Claims, and also provides a mechanism ensuring the estate will still benefit from any recovery relating to the Subject Claims.

20. I determined that investigation of the Subject Claims against the Debtor's former officers and related parties will necessarily be an expensive endeavor requiring substantial attorney's fees and costs, and out-of-state travel, and that pursuing the Subject Claims will likely involve protracted discovery and litigation. In my experience, claims against former directors and officers are inherently expensive and complex to investigate and to litigate. The Settlement Agreement will help preserve the bankruptcy estate's current holdings by shifting the investigative and litigation expense to the Marshalls and/or ASL, while at the same time confirming that the Marshalls and/or ASL are the party in interest to pursue the Subject Claims, and ensuring that the estate will receive a meaningful benefit in the event there are net proceeds recovered from these claims.

21. I have concluded in my business judgment that the proposed Settlement Agreement (attached to the Motion as **Exhibit "1"**) is in the best interest of the estate and creditors because it will allow the Marshalls and/or ASL to investigate and pursue the Subject Claims which may provide a substantial benefit to the bankruptcy estate (25% of any net recovery) without any additional expense to the bankruptcy estate.

Dated: February 19, 2019

*Lenard E. Schwartzer*