1  Jason A. Imes, Esq., NV Bar No. 7030
2  Schwartzer & McPherson Law Firm
   2850 South Jones Blvd., Suite 1
3  Las Vegas NV 89146-5308
   Telephone:    (702) 228-7590
4  Facsimile:    (702) 892-0122
   E-Mail:bkfilings@s-mlaw.com
5  *Attorneys for Lenard E. Schwartzer, Trustee*

6                **UNITED STATES BANKRUPTCY COURT**

7                      **DISTRICT OF NEVADA**

8  In re:                                │  Case No. BK-S-18-12662-ABL

9  MEDIZONE INTERNATIONAL, INC.,         │  Chapter 7

10                                       │  **APPLICATION TO EMPLOY**
                              Debtor.    │  **MEYERS LAW GROUP, P.C., AS**
11                                       │  **SPECIAL LITIGATION COUNSEL**
                                         │  **PURSUANT TO 11 U.S.C. §327(e)**
12
13                                       │  Hearing Date:    April 18, 2019
                                         │  Hearing Time:  11:00 a.m.
14

15        Lenard E. Schwartzer, Chapter 7 Trustee (the "Trustee") for the above-captioned

16  bankruptcy case, respectfully requests that this Court approve the employment of the law firm of

17  MEYERS LAW GROUP, P.C., ("MLG") on a contingency fee basis as special litigation counsel to the

18  Trustee *nunc pro tunc* to January 29, 2019, pursuant to sections 327(e) and 328(a) of the

19  Bankruptcy Code and Bankruptcy Rule 2014(a).  The assets of this bankruptcy estate include

20  potential claims, rights, causes of action, damages, liens and other charges against all former

21  officers, directors, representatives, agents, employees, counsel and other insiders of the Debtor

22  (the "Subject Claims").  Trustee proposes to engage MLG to investigate and, if deemed

23  appropriate, prosecute the Subject Claims as counsel for the Trustee.  The proposed terms and

24  scope of service are set forth with more particularity in this Application and the Contingency Fee

25  Agreement attached to this Application as **Exhibit "1."**

26        This Application is also based upon the *Declaration of Lenard E. Schwartzer* (the

27  "Schwartzer Declaration") and the *Declaration of Merle Meyers* (the "Meyers Declaration") filed

28  concurrently with this Application, and the following Points and Authorities.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

## I.    JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.    CASE BACKGROUND

1.    On April 18, 2018, creditors Edwin G. Marshall and Dr. Jill C. Marshall (collectively, the "Marshalls"), and creditor Ushio America, Inc. (together with the Marshalls, the "Petitioning Creditors"), filed an involuntary petition under Chapter 11 the Bankruptcy Code against Debtor MEDIZONE INTERNATIONAL, INC. (the "Debtor") in Reno, Nevada, thereby commencing bankruptcy case number 18-50412-GWZ (the "Involuntary Chapter 11 Case").

2.    On May 8, 2018 (the "Petition Date"), the Debtor filed its own voluntary case pursuant to Chapter 7 of the Bankruptcy Code in Las Vegas, Nevada [ECF No. 1], and the Trustee has been appointed to administer this Chapter 7 estate.  The Involuntary Chapter 11 Case has been dismissed.

3.    The Trustee has determined that the assets of this bankruptcy estate include potential claims, rights, causes of action, damages, liens and other charges against all former officers, directors, representatives, agents, employees, counsel and other insiders of the Debtor (the "Subject Claims").  (See Schwartzer Declaration.)

4.    A dispute existed between AsepticSure Scientific, LLC ("ASL"), Edward G. Marshall and Jill C. Marshall (collectively, the "Marshalls") and the Trustee with regard to ownership of the Subject Claims, based upon a sale of certain estate assets to ASL as of August 31, 2018.  [See ECF No. 85]  That dispute has been resolved pursuant to an amended settlement agreement entered into among such parties as of March 21, 2019 (the "Amended Settlement Agreement").  Under the terms of the Amended Settlement Agreement (subject to pending Bankruptcy Court approval) the parties agreed the Subject Claims are owned by and shall be investigated by and, if appropriate, prosecuted by the Trustee on behalf of the bankruptcy estate.

5.    The Trustee now wishes to retain MLG as his special litigation counsel pursuant to Sections 327 et seq. of the Bankruptcy Code to investigate and, if deemed appropriate, prosecute

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 - Fax: (702) 892-0122

the Subject Claims, upon the terms set forth in the Contingency Fee Agreement attached to this Application as **Exhibit "1."**

6.    MLG represents the Marshalls both as creditors of this bankruptcy estate and as providers of post-petition financing to the estate [ECF No. 53].  All post-petition loans extended by the Marshalls to the bankruptcy estate have already been repaid in full, but the Marshalls still assert unsecured pre-petition claims against the bankruptcy estate.  (*See* Meyers Declaration.)

7.    MLG does not have any unsecured pre-petition claim for attorney's fees or other claim against the bankruptcy estate.  (*See* Meyers Declaration.)

8.    MLG has the advantage of already being extremely familiar with the Subject Claims and the firm's work will be limited to investigating and potentially litigating those claims. Pursuant to the Amended Settlement Agreement, the Marshalls and MLG have agreed to advance the up-front costs for MLG's work on the Subject Claims so that the bankruptcy estate will not advance funds for any of MLG's expenses.  (*See* Meyers Declaration.)

9.    MLG has agreed to pursue the claims on a contingency fee basis as set forth with more particularity in the attached Contingency Fee Agreement (**Exhibit "1"**).  MLG has agreed to accept 40% of any gross recovery prior to commencement of trial, and 45% of any gross recovery after the first witness is called at trial (*see* **Exhibit "1,"** ¶6), plus reimbursement of the firm's reasonable litigation expenses.  (*See* Meyers Declaration.)

10.    MLG acknowledges that payment of any amount to Proposed Special Counsel from recovered proceeds relating to the Subject Claims will require separate approval by this Court pursuant to 11 U.S.C. §330.  (*See* Meyers Declaration.)

11.    The Trustee has concluded that engagement of MLG pursuant to the terms set forth above is reasonable and in the interest of the estate and its creditors. (*See* Schwartzer Declaration.)

/ / /

/ / /

/ / /

/ / /

/ / /

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 - Fax: (702) 892-0122

**Memorandum Of Law**

**I.  Basis for Retention of Special Litigation Counsel**

11 U.S.C. §327(e) authorizes employment of special purpose professionals when it is in the best interest of the estate and provides:

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11. U.S.C. § 328(a) provides guidance regarding compensation of the professionals:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

Section 328 permits a professional to have the terms and conditions of its employment pre-approved by a bankruptcy court, such that the bankruptcy court may alter agreed upon compensation only "if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of fixing such terms and conditions." In re Circle K, Corp., 279 F.3d 669, 671 (9th Cir. 2002).

As the Trustee's special counsel, MLG will render legal advice and perform legal services to the Trustee relating to the Subject Claims as detailed in **Exhibit "1."**  The Marshalls will advance funds to MLG for a portion of the expenses of the investigation and potential litigation, and MLG will advance the balance of such expenses.  Payment of MLG's contingency fee and reimbursement of costs will only be paid by the Trustee from recovered proceeds (if any) relating to the Subject Claims after approval of such fees and expenses by this Court pursuant to

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  11 U.S.C. §330.  No fees or costs will be advanced or paid by the Trustee to MLG absent a

2  recovery based on the Subject Claims.  The Trustee has concluded this arrangement is in the best

3  interest of the estate and creditors because it will benefit other creditors by preserving the value of

4  the estate's assets pending liquidation.  (*See* Schwartzer Declaration.)

5  **II.  Disinterestedness and Disclosure of Connections**

6       A.    Disinterested Pursuant to 11 U.S.C. §101(14)

7       To the best of its knowledge, MLG is disinterested within the meaning of Section 101(14)

8  of the Bankruptcy Code **except as set forth herein**.  MLG, its shareholders, counsel and

9  associates (a) are not creditors, equity security holders,  or insiders of the Debtor; (b) are not and

10  were not, within two years before the date of the debtor's bankruptcy petition, a director, officer,

11  or employee of Debtor; and (c) do not hold an interest materially adverse to the interest of the

12  estate or of any class of creditors or equity holders by reason of any direct or indirect relationship

13  to, connection with, or interest in, the Debtor, or for any other reason, **except as stated herein**.

14  (*See* Meyers Declaration.)

15       **In particular, MLG represents the Marshalls who are creditors of this bankruptcy**

16  **estate and the Marshalls were post-petition lenders to this estate.  MLG, however, has no**

17  **pre-petition claim against this bankruptcy estate, and the Marshalls' post-petition loan to**

18  **this bankruptcy estate has been repaid in full.  The Trustee submits that MLG's continuing**

19  **representation of the Marshalls as creditors is not inconsistent or adverse to its**

20  **representation of the Trustee as special counsel as described herein.**  (*See* Meyers

21  Declaration.)

22       B.    Disclosure of Connections Pursuant to FRBP 2014(a)

23       To the best of its knowledge, neither MLG nor any member of MLG, has any connections

24  with the Debtor, creditors, or any other party in interest, their respective attorneys and accountants,

25  the United States Trustee, or any person employed in the Office of the United States Trustee in

26  this case or in matters upon which MLG will be employed this case, **except as set forth herein**.

27  (*See* Meyers Declaration.)

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    Pursuant to FRBP 2014(a), this application is accompanied by the Meyers Declaration

2   which constitutes a verified statement and sets forth, to the best of the declarant's knowledge, the

3   connections, if any, with the Debtor, creditors, any other party in interest, their respective

4   attorneys and accountants, the United States Trustee, or any person employed in the office of the

5   United States Trustee in this case.  MLG will supplement these disclosures in the event further

6   connections are discovered regarding persons or entities that later become identified as appropriate

7   for disclosure.  (*See* Meyers Declaration.)

8        C.    No Adverse Interest Pursuant to 11 U.S.C. §327(a) and §327(e)

9        To the best of their knowledge, neither MLG, nor any member of the firm, hold or

10  represent any interest that is adverse to the Debtor or to the estate with respect to the matters for

11  which they are being employed, and they are disinterested pursuant to 11 U.S.C. §101(14) as set

12  forth above.  (*See* Meyers Declaration.)

13       Accordingly, the Trustee has determined that, to the best of his knowledge, MLG, and its

14  partners and associates, are disinterested persons as that term is defined in 11 U.S.C. § 101(14)

15  and pursuant to Fed.R.Bankr. P. 2014(a).

16       Subject to the Court's approval of this Application, MLG is willing to serve as the

17  Trustee's special counsel to perform the legal services described above and the firm will strive to

18  insure that MLG's employment will not be duplicative of the role of the Trustee's general

19  bankruptcy counsel, Schwartzer & McPherson Law Firm.  (*See* Meyers Declaration.)

20       In this case, MLG, the Marshalls, and the Trustee have a shared interest in investigating

21  and potentially pursing the Subject Claims, so the interests of the involved parties in this situation

22  are aligned.

23  **III.    Compensation Arrangement**

24       No payments have been made or promised to MLG for services rendered in any capacity

25  whatsoever in connection with the Chapter 7 Case.  (*See* Meyers Declaration.)

26       There is no agreement or understanding between MLG and any other entity for the sharing

27  of compensation to be received for services rendered in or in connection with this Chapter 7 case,

28  **except that funds will be advanced by the Marshalls to cover MLG's investigative and/or**

**litigation costs**. No compensation or expense reimbursement will be paid to MLG from proceeds of the Subject Claims except as authorized by order of this Court, after notice and an opportunity for a hearing pursuant to 11 U.S.C. §330. (*See* Meyers Declaration.)

MLG has not received and is not holding any retainer or advance payment for services from the Trustee as Trustee's special litigation counsel in this case. (*See* Meyers Declaration.)

The Trustee has determined that it will be economical and consistent with the purposes and policies of the Bankruptcy Code to employ MLG as special litigation counsel to pursue the Subject Claims. The Trustee believes the proposed contingency fee structure (40/45% of gross recoveries plus reimbursement of costs upon Bankruptcy Court approval) is reasonable and is beneficial to the bankruptcy estate and its creditors. The Trustee has concluded that under these circumstances, employment of MLG on the proposed terms is appropriate. (*See* Schwartzer Declaration.)

**IV.    Nunc Pro Tunc Employment**

Employment of counsel *nunc pro tunc* is permitted in limited circumstances. In re Atkins, 69 F.3d 970 (9th Cir. 1995). At a minimum, the subject professionals "must (1) satisfactorily explain their failure to receive prior judicial approval [of their employment]; and (2) demonstrate that their services benefitted the bankruptcy estate in a significant manner." In re Atkins, 69 F.3d at 974 and 975–76, citing Halperin v. Occidental Fin. Grp., Inc. (In re Occidental Fin. Grp., Inc.), 40 F.3d 1059, 1062 (9th Cir.1994); and Okamoto v. THC Fin. Corp. (In re THC Fin. Corp.), 837 F.2d 389, 392 (9th Cir.1988).

MLG has an extensive background with this bankruptcy case, and has successfully litigated claims like the Subject Claims (breach of fiduciary duty by officers and directors, etc.) in other unrelated bankruptcy cases, and is well situated and qualified to continue to provide this service to the Trustee. (*See* Meyers Declaration.)

MLG commenced investigative work January 29, 2019, but the Trustee did not apply for employment of the firm at that time because at that stage it was uncertain if the Trustee would engage MLG to investigate and pursue the claims on behalf of the bankruptcy estate, and it was also unclear whether the Trustee would pursue the Subject Claims, given the dispute with the

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 - Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   Marshalls and ASL.  MLG conducted initial discovery and investigation (including several Rule

2   2004 examinations) at its own expense to demonstrate to the Trustee the potential viability and

3   benefit of the Subject Claims to the bankruptcy estate.  The Trustee has determined that in the

4   event there is any subsequent recovery based on the Subject Claims, it will be appropriate to

5   reimburse MLG for the firm's initial investigative expenses *nunc pro tunc* to January 29, 2019

6   (subject to Bankruptcy Court approval) from any recovered proceeds since these pre-Application

7   discovery expenses will have tangibly benefitted the bankruptcy estate.  The Trustee did not seek

8   employment of the firm until that initial determination had been made.  (*See* Schwartzer

9   Declaration.)

10       MLG has already provided extensive service and will continue to assist the Trustee which

11  is expected to result in a benefit to the bankruptcy estate.  In the event there is no recovery, the

12  bankruptcy estate will not make any payment to MLG.  The Trustee believes *nunc pro tunc*

13  employment of the firm to January 29, 2019, will help incentivize MLG to pursue a meaningful

14  recovery from the Subject Claims, while still limiting the estate's payment obligation to work that

15  actually benefits the estate.  (*See* Schwartzer Declaration.)

16                                         **CONCLUSION**

17       Based upon the foregoing, pursuant to sections 327(e) and 328(a) of the Bankruptcy Code

18  and Bankruptcy Rule 2014(a), the Trustee requests:

19       1.      Authority to engage the MEYERS LAW GROUP, P.C., as special litigation counsel to

20  the Trustee *nunc pro tunc* to January 29, 2019, on a contingency fee basis for the purpose of

21  investigating and, if deemed appropriate, prosecuting the Subject Claims as described herein

22  pursuant to the terms set forth with more particularity in the Contingency Fee Agreement attached

23  to this Application as **Exhibit "1;"** and

24       2.      Such further relief as the Court may allow.

25  / / /

26  / / /

27  / / /

28  / / /

A proposed form of Order is attached to this Application as **Exhibit "2."**

DATED: March 21, 2019.

/s/ Jason A. Imes
Jason A. Imes, Esq.
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146
*Attorneys for Lenard E. Schwartzer, Trustee*

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

# EXHIBIT "1"

## CONTINGENCY FEE AGREEMENT
### (Trustee and MLG)

This Contingency Fee Agreement (Trustee and MLG) (this "Agreement") is hereby entered into by MEYERS LAW GROUP, P.C. ("MLG" or "Firm"), and LEONARD E. SCHWARTZER as trustee (the "Trustee" or "Client"), as March 21, 2019..

## RECITALS

A.      Medizone International, Inc. (the "Debtor") filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code, in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"), on May 8, 2018 (the "Petition Date"), commencing the case of *In re Medizone International, Inc.,* case no. 18-12662 (the "Chapter 7 Case").

B.      On or shortly after the Petition Date, the Trustee was appointed as the chapter 7 trustee of the estate (the "Estate") of the Debtor.

C.      MLG represents Edward G. Marshall and Jill C. Marshall (collectively, the Marshalls) as creditors of the Estate.  Each of the Marshalls also has filed a general unsecured claim against the Estate.  In particular, Edwin G. Marshall has filed Claim No. 2 in the amount of $1,118,448.00, and Jill C. Marshall has filed Claim No. 1 in the amount of $466,812.00 (collectively, the "Unsecured Claims").

D.      Among the assets of the Estate are any and all claims, rights, causes of action, damages, liens and all other charges against all former officers, directors, representatives, agents, employees, counsel and other insiders of the Debtor (the "Subject Claims").

E.      A dispute existed between AsepticSure Scientific, LLC ("ASL"), the Marshalls and the Trustee with regard to ownership of the Subject Claims, based upon a sale of certain Estate assets to ASL as of August 31, 2018.  That dispute has been resolved pursuant to an amended settlement agreement entered into among such parties as of March 21, 2019 (the "Settlement Agreement").  Under the terms of the Settlement Agreement, all such parties agreed that the Subject Claims are owned by, and shall be investigated and, if appropriate, prosecuted by the Estate.

F.      The Trustee now wishes to retain MLG as his special counsel, pursuant to Sections 327 *et seq.* of the Bankruptcy Code, to investigate and, if deemed appropriate, prosecute the Subject Claims, upon the terms set forth below.

31650.DOC

**AGREEMENT**

NOW, THEREFORE, THE PARTIES HEREBY AGREE, COVENANT AND STIPULATE, FOR ADEQUATE CONSIDERATION HEREBY RECEIVED AND ACKNOWLEDGED, as follows:

1.    Recitals Incorporated.  Each of the facts set forth in the foregoing recitals is known to Firm and Client (collectively, the "Parties") to be true and correct, and each such recital is incorporated herein.

2.    Conditions.  This Agreement will take effect, and Firm will have an obligation to provide legal services hereunder, only upon, and conditioned upon, (a) Client promptly signing and returning this Agreement; and (b) entry of orders of the Bankruptcy Court approving this Agreement and the Settlement Agreement, pursuant to Sections 327 *et seq.* of the Bankruptcy Code and Bankruptcy Rule 9019, respectively. Firm may suspend or terminate legal services under this Agreement, in Firm's sole and absolute discretion, in the event that both of such orders are not entered on or before April 25, 2019.

3.    Scope of Services.  Client retains Firm to represent Client in connection with the investigation and, if appropriate, the prosecution of the Subject Claims, and objections to claims filed in the Chapter 7 Case by any defendants or other parties against whom the Subject Claims are asserted.  If a court action is filed, Firm will represent Client until settlement or judgment, by way of arbitration or trial, is reached.  Firm will oppose any motion for new trial or any other post-trial motions filed by an opposing party, and/or will make any appropriate post-trial motion on Client's behalf. Firm, at its sole and absolute discretion, may also represent Client in any appeal after judgment or in any proceeding designed to execute on, or otherwise enforce, the judgment, but reserves the right to decline such representation upon notice to Client.

4.    Responsibilities of the Parties.  Subject to all other provisions of this Agreement, Firm will provide those legal services reasonably required to represent Client in investigating and, if appropriate, prosecuting the Subject Claims, and will take reasonable steps to keep Client informed of significant developments, and to respond promptly to Client's inquires and communications.  Client agrees to be truthful with Firm, to keep Firm informed of any information and developments which come to Client's attention, and to abide by this Agreement.  Client agrees to appear at all legal proceedings and discovery events that Firm deems reasonably necessary and to cooperate fully with Firm on all matters related to the investigation, preparation and presentation of the Subject Claims.

5.    Right to Withdraw.  Upon the conclusion of preliminary investigation of the Subject Claims, in the event that Firm concludes that prosecution of any Subject Claims is not prudent, proper or worthwhile, in Firm's sole and absolute discretion. Firm may withdraw from this engagement, or decline to prosecute those particular Subject Claims, by written notice to Client, in which event Firm will not be required to render

2

any further services, or incur any further costs, under the terms of this Agreement with respect to any, or particular identified, Subject Claims, as applicable.

6.    Contingency Fees.  Firm will only be compensated for legal services rendered if a recovery is obtained for Client.  If no recovery is obtained, Client will be obligated to pay only for costs, disbursements and expenses, and only to the extent described in paragraph 9 herein.    Fees owing to Firm shall be measured as the Contingency Percentage, as defined below, multiplied by the "Gross Proceeds," which is defined as follows:  Any amount paid by or on behalf of any person, defendant or third party, or the amount of other value received, including any non-monetary consideration, which amounts relate to or are on account of, directly or indirectly, the Subject Claims, regardless of whether such payments are made as a result of enforcement of judgment, settlement or other resolution, and regardless of whether such payments are made in cash, stock, by payment or assumption of liabilities, or otherwise, and regardless of whether such payment is styled as an amount paid in settlement, a royalty, a licensing fee, a purchase price for the sale or transfer of stock or assets, merger consideration or otherwise.   Any monetary sanctions or Court-ordered attorneys' fees imposed upon defendants on account of conduct occurring during the course of this engagement shall not be considered part of the Gross Proceeds, and shall belong to Firm as additional compensation for extraordinary time and effort provided by Firm, except that to the extent that such sanctions include costs incurred by Firm, such costs, to the extent received by Firm, shall be credited to the Cost Retainer, as defined below.  As the term is used herein, "Contingency Percentage" shall mean (a) forty percent (40%) if Firm's services hereunder are fully completed, with no litigation of the Subject Claims or objections to unsecured claims remaining pending, prior to the first witness being called at a trial of any of such matters; and (b) forty-five percent (45%) if Firm's services hereunder are fully completed at any time after the first witness being called at such a trial.

7.    Formulae.  Any Gross Proceeds, whether interim (e.g., as a result of a settlement with, or enforcement against, less than all defendants) or final, shall be distributed as follows:

(a)    First, reimbursement or payment of any costs, sanctions or other awards imposed upon the Trustee, the Estate or Firm by any court in the prosecution of the Subject Claims, subject to the Bankruptcy Court's interim or final approval.

(b)    Second, to replenish the Cost Retainer as provided in paragraph 9 herein, unless this engagement has been concluded.

(c)    Third, the Contingency Percentage of Gross Proceeds, without deduction for any costs incurred by any party, shall be distributed to Firm, subject to the Bankruptcy Court's interim or final approval.

(d)    Fourth, Firm shall be reimbursed for all costs incurred, to

3

the extent not reimbursed from the Cost Retainer, subject to the Bankruptcy Court's interim or final approval (*provided*, that no such approval shall be required in order for Firm to reimburse itself from funds within the Cost Retainer to the extent that such funds are derived from distributions on account of the Unsecured Claims pursuant to paragraph 9(a) herein).

(e)    Fifth, all remaining net proceeds, after the distributions set forth in subparagraphs (a), (b), (c) and (d) above, shall be disbursed seventy-five percent (75%) to the Marshalls and twenty-five percent (25%) to Client.

8.    <u>Deferred or Noncash Distributions</u>.  In the event that any portion of the Gross Proceeds consists of payments to be made over a period of time, or noncash equivalent property, the contingency fee shall be based on the present cash value of such Gross Proceeds as determined by generally recognized accounting and appraisal standards.  Firm's fee shall be payable in full at the time of recovery even if the recovery is in the form of payments to be received over a period of time.  If the initial payments of such Gross Proceeds are insufficient to pay Firm's fee in full, Client agrees that all future payments shall be paid exclusively to Firm until the balance of the fee is paid in full. Client understands that this provision may result in a delay of any payments of Client's portion of the recovery to Client.

9.    <u>Costs</u>.  Subject to the Bankruptcy Court's interim or final approval (other than funds within the Cost Retainer to the extent that such funds are derived from distributions on account of the Unsecured Claims pursuant to paragraph 9(a) herein, as to which no Bankruptcy Court approval will be required), Client shall pay all reasonable costs incurred by Firm on or after January 29, 2019 in its engagement under this Agreement, including without limitation, filing fees, court reporters' fees, expert fees and costs, travel expenses (such as taxis, meals, lodging, and business class airfare), telephone and telecopy charges, messenger and other delivery fees, computer research charges, photocopying, mailing costs, court fees, jury fees, service of process charges, notary fees, deposition costs, investigation expenses, consultant fees and expenses, mediation, arbitration and special master fees and expenses, and the fees and costs of expert witness retained by Firm, but only to the extent of the Gross Proceeds and the Cost Retainer, as follows:

(a)    The Marshalls have provided Firm with a security interest and assignment of all proceeds, distributions and other payments made on account of the Unsecured Claims, in order to fund a retainer (the "Cost Retainer") for the purpose of reimbursing Firm's costs incurred in this engagement, up to the amount $50,000.00.

(b)    The Cost Retainer shall be replenished after debiting reimbursed costs, by any Gross Proceeds received by Client, upon such receipt.

4

(i)    If, for example, distributions of $40,000.00 in the aggregate are made on account of the Unsecured Claims prior to full resolution of the Subject Claims, that $40,000.00 will be deposited into the Cost Retainer and debited against reimbursable costs and interest thereon incurred by Firm.

(ii)    In the same example, if interim Gross Proceeds are received by Client before full resolution of the Subject Claims, those Gross Proceeds shall be used to replenish the Cost Retainer to the balance of $50,000.00 after debiting all reimbursable costs and interest thereon incurred by Firm.    All amounts remaining from such interim Gross Proceeds after such replenishment shall be distributed in accordance with the formulae set forth in paragraph 7 herein.

(c)    All costs and expenses will be charged at Firm's cost, including in-office photocopying at $0.20 per page, and mileage at $0.50 per mile.

(d)    Firm will select expert witnesses, consultants and investigators that in Firm's judgment are necessary to aid in the preparation and prosecution of Client's case and will inform Client of the persons selected and their charges. Such experts, consultants and investigators, to the extent within the scope of Sections 327 *et seq.* of the Bankruptcy Code, shall be subject to approval of the Bankruptcy Court.  Firm shall file appropriate motions for such approval under seal and pursuant to rules of confidentiality to the extent permitted by the Bankruptcy Court.

10.    <u>Lien</u>.  Client hereby grants to Firm a first and exclusive lien and security interest in the Subject Claims and all Gross Proceeds, in order to secure all obligations owing from Client to Firm under the terms of this Agreement.  Such lien and security interest will attach to any recovery Client may obtain, whether by arbitration award, judgment, settlement or otherwise.

11.    <u>Compensation Following Discharge</u>.  In the event of Firm's discharge or withdrawal as provided in paragraphs 2 and 15 herein, Client agrees that, upon payment or receipt of any Gross Proceeds, Firm shall be entitled to be paid a reasonable fee for the legal services rendered.  Such fee shall be determined by considering the following factors:

(a)    The actual number of hours expended by Firm in performing legal services for Client;

(b)    Firm's normal hourly rate;

(c)    The extent to which Firm's services have contributed to the result obtained;

(d)    The amount of the fee in proportion to the value of the services

5

performed;

       (e)    The amount of recovery obtained;

       (f)    The time limitations imposed on Firm by Client or by the circumstances; and

       (g)    The experience, reputation and ability of personnel performing the services.

Notwithstanding such discharge, Firm shall be entitled to retain the liens and security interests granted pursuant to paragraph 10 herein, in order to secure payment of all costs and fees to which Firm is entitled under the terms of this Agreement.

12.    <u>Negotiability of Fees</u>. Client is advised that the fees set forth above are not set by law, but are negotiated between Firm and Client.

13.    <u>Services Not Covered By This Agreement</u>.  This Agreement does not cover other related claims that may arise and may require legal services.  If additional services are necessary in connection with Client's claims and Client requests Firm to perform such services, an additional fee arrangement must be made between Firm and Client in writing.  Such additional services may be required, for example, in defense of a lawsuit, cross-complaint or other cross demand filed against Client in connection with the above-referenced matter.

14.    <u>Settlement</u>.  Firm will not make any settlement or compromise of the Subject Claims without Client's prior approval and Bankruptcy Court approval.  Client retains the right to accept or reject any opposing party settlement offer.  Client agrees not to make any settlement or compromise of Client's claims without prior notice to, and consultation with, Firm.

15.    <u>Discharge and Withdrawal</u>.  Client may discharge Firm at any time, upon written notice to Firm.  In addition to the terms of paragraph 2 herein, Firm may withdraw from representation of Client (a) with Client's consent, (b) upon court approval, or (c) if no court action is filed, for good cause upon reasonable notice to Client.  Good cause includes Client's breach of this Agreement, Client's refusal to cooperate with Firm or to follow Firm's advice on a material matter, or any other fact or circumstance that would render Firm's continuing representation unlawful or unethical.  If a court action, arbitration or other judicial proceeding has been filed on Client's behalf, Client shall promptly deliver to Firm a signed substitution of counsel form at Firm's request.

16.    <u>Conclusion of Services</u>.  After Firm's services conclude and upon Client's written request, Firm will deliver Client's file and property to Client whether or not Client has paid all fees and costs owed to Firm.  If Client does not request in writing the return of Client's file, Firm will retain Client's file for five (5) years, after which time Firm may have Client's file destroyed. If Client desires to have Client's file maintained beyond the five (5) years after Client's matter has concluded, separate arrangements with

31650.DOC

Firm must be made.

17.    Advice of Independent Counsel.    By signing this Agreement, Client acknowledges having been advised that Client may seek the advice of an independent lawyer of Client's choice regarding the fairness of this Agreement, the liens and security interests granted herein, and all other terms of this Agreement, and that Client must be given a reasonable opportunity to seek such advice.

18.    Disclaimer of Guarantee.    Nothing in this Agreement and nothing in Firm's statements to Client may be construed as a promise or guarantee about the outcome of this matter.    Firm makes no such promises or guarantees.    There can be no assurance that Client will recover any sum or sums in this matter.    Firm's comments about the outcome of this matter are expressions of opinion only.    Client acknowledges that Firm has made no promise or guarantee about the outcome of this matter.

19.    Entire Agreement.    This Agreement contains the entire agreement of the parties. No other agreement, statement or promise made on or before the effective date of this Agreement will be binding on the parties.

20.    Modification.    This Agreement may be modified by subsequent agreement of the Parties only by an instrument in writing signed by both Firm and Client.

21.    Counterparts.    It is understood and agreed that this Agreement may be executed in several counterparts and may be transmitted by electronic mail or by original signature, each of which shall, for all purposes, be deemed an original and all of such counterparts, taken together, shall constitute one and the same Agreement, even though both Firm and Client may not have executed the same counterpart of this Agreement.

22.    Authority.    Each of the parties hereto represents that he or it has all necessary right, power and authority to enter into and perform this Agreement under all applicable laws, and that this Agreement shall be binding on such party in accordance with its terms.

23.    Further Assurances.    Each of the parties hereto agrees to execute such documents, and take such actions, as may be reasonably requested by the other party to this Agreement in order to effectuate the terms of this Agreement.

24.    Time is of Essence.    Time is of the essence in this Agreement, and any timeliness stated herein may be strictly enforced.

THE PARTIES HERETO HAVE READ AND UNDERSTAND THE FOREGOING TERMS AND AGREE TO THEM AS OF THE DATE FIRM FIRST PROVIDED SERVICES.

31650.DOC

WHEREFORE, the Parties have executed this Agreement as of January 29, 2019 upon the terms and conditions set forth above.

LEONARD E. SCHWARTZER, as Trustee

MEYERS LAW GROUP, P.C.

By: _____
Merle C. Meyers, President

8

31650.DOC

# EXHIBIT "2"

Jason A. Imes, Esq., NV Bar No. 7030
Schwartzer & McPherson Law Firm
2850 South Jones Blvd., Suite 1
Las Vegas NV 89146-5308
Telephone:    (702) 228-7590
Facsimile:    (702) 892-0122
E-Mail:bkfilings@s-mlaw.com
*Attorneys for Lenard E. Schwartzer, Trustee*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No. BK-S-18-12662-ABL |
| MEDIZONE INTERNATIONAL, INC., | Chapter 7 |
| Debtor. | **[ PROPOSED ] ORDER GRANTING APPLICATION TO EMPLOY MEYERS LAW GROUP, P.C., AS SPECIAL LITIGATION COUNSEL PURSUANT TO 11 U.S.C. §327(e)** |
| | Hearing Date:    April 18, 2019<br>Hearing Time:    11:00 a.m. |

The Trustee's *Application to Employ Meyers Law Group, P.C., as Special Litigation Counsel Pursuant to 11 U.S.C. §327(e)* (the "Application") [ECF No. ____] having come before this Court on the 18th day of April, 2019; Lenard E. Schwartzer, Chapter 7 Trustee (the "Trustee") appearing by and through his counsel, Jason A. Imes., Esq., of the Schwartzer & McPherson Law Firm; other counsel appearing as noted on the record; the Court having reviewed the Application, there being no opposition filed, and the Court being satisfied that proposed special litigation counsel, MEYERS LAW GROUP, P.C., represents no interest adverse to the Trustee or the estate

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

of the debtor in this matter, that its employment is necessary and would be in the best interests of

the estate;  the Court having made its findings of fact and conclusions of law upon the record

which are incorporated herein pursuant to Federal Rules of Bankruptcy Procedure 9014(c) and

7052, and for good cause appearing,

**IT IS HEREBY ORDERED** that the Trustee's Application is GRANTED; and

**IT IS FURTHER ORDERED** that the Trustee is authorized to employ the MEYERS

LAW GROUP, P.C., as special litigation counsel to the Trustee *nunc pro tunc* to January 29,

2019, pursuant to 11 U.S.C. §§ 327(e) and 328(a) on a contingency fee basis for the purpose of

investigating and, if deemed appropriate, prosecuting the Subject Claims as described in the

Application [ECF No. _____ ] pursuant to the terms set forth with more particularity in the

Contingency Fee Agreement attached to this Order as **Exhibit "1."**

**IT IS SO ORDERED.**

Submitted by:


_____

Jason A. Imes, Esq.
Schwartzer & McPherson Law Firm
2850 South Jones Blvd., Suite 1
Las Vegas NV 89146
*Attorneys for Trustee*

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

## LR 9021 CERTIFICATION

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐  The court waived the requirement of approval under LR 9021(b)(1).

☐  No party appeared at the hearing or filed an objection to the motion.

☐  I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

☐  I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objection to the form or content of the order.

_____

Jason A. Imes, Esq.
SCHWARTZER & McPHERSON LAW FIRM

# # #