Stephen W. Mooney, Esq.
Nevada Bar No. 9870
smooney@wwhgd.com
Jeremy R. Alberts, Esq.
Nevada Bar No. 10497
jalberts@wwhgd.com
WEINBERG, WHEELER, HUDGINS,
  GUNN & DIAL, LLC
6385 S. Rainbow Blvd., Suite 400
Las Vegas, Nevada 89118
Telephone:    (702) 938-3838
Facsimile:    (702) 938-3864
*Attorneys for David Dodd, David Esposito and Phil Theodore*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re: MEDIZONE INTERNATIONAL, INC., <br><br> Debtor. | Case No. BK-S-18-12662-ABL <br><br> Chapter 7 <br><br> **OBJECTION TO (A) APPLICATION TO EMPLOY MEYERS LAW GROUP, P.C., AS SPECIAL LITIGATION COUNSEL PURSUANT TO 11 U.S.C. § 327(e) AND (B) MOTION FOR APPROVAL OF AMENDED SETTLEMENT AGREEMENT** |

David Dodd, David Esposito and Philip Theodore, former officers and/or directors of Medizone International, Inc. and creditors in this Chapter 7 case (collectively, the "**Objectors**"), by and through their undersigned counsel, respectfully file this Objection to (a) Application to Employ Meyers Law Group, P.C., as Special Litigation Counsel Pursuant to 11 U.S.C. § 327(e) (the "**Application**") and (b) Motion for Approval of Amended Settlement Agreement (the "**Settlement Motion**").

## BACKGROUND

1. By the Application and Settlement Motion, the Chapter 7 Trustee seeks to both resolve the ownership of potential claims against former directors and officers of Medizone International, Inc. ("**Medizone**") and to retain the Meyers Law Group, P.C. to

pursue such claims on the estate's behalf. Specifically, the Chapter 7 Trustee and Edwin G. Marshall and Dr. Jill C. Marshall, former Medizone directors and officers who purchased substantially all of Medizone's assets in this bankruptcy case, have agreed that potential claims against former directors and officers belong to the Chapter 7 estate notwithstanding an erroneously worded bill of sale that transferred such claims to the Marshalls. The parties also agreed that the Chapter 7 Trustee would retain the Marshalls' counsel, the Meyers Law Group, P.C. ("**Meyers**"), as special litigation counsel to pursue potential estate claims. The Application proposes to pay Meyers 40% of gross litigation proceeds prior to any trial and 45% of gross litigation proceeds subsequent to the commencement of any trial. Additionally, Meyers would fund a $50,000 cost retainer to be secured by any recoveries that would inure to the Marshalls on account of their filed proofs of claim. Net litigation proceeds would be payable 25% to the Chapter 7 estate and 75% to the Marshalls.

2. The Objectors became officers and/or directors of Medizone subsequent to Ed and Jill Marshalls' abrupt resignations after 19 years as Chief Executive Officer and Director of Operations of Medizone. At the time of their resignations in early 2017, Medizone lacked sufficient cash for operations, had an approximately $50,000 shortfall on March 2017 payables to employees and service providers, and lacked the prospect of significant sales because the Marshalls failed to succeed on key commercial milestones and secure needed regulatory approvals.

3. In an effort to resuscitate the company, David Esposito became Medizone's Chairman of the Board and interim Chief Executive Officer. In September 2017, David Dodd was appointed as Medizone's Chief Executive Officer and a member of the Board of Directors. Philip Theodore was appointed as Medizone's General Counsel. The Objectors invested over $500,000 of their own capital into Medizone in an effort to right the ship. They took zero salary and were not reimbursed for their expenses. Additionally, they had made significant progress on preparing for customer beta tests/trials in the United States for Medizone's AsepticSure product and clarifying a

regulatory pathway to gain FDA clearance and begin required product testing. They were also focused on securing critical financing to maintain business operations and alternatively seeking numerous strategic options for the company.

4. These efforts were cut short by the Marshalls' filing of the involuntary petition against Medizone without any notice to the Objectors. It now appears that the involuntary filing was part of a larger scheme by the Marshalls to tortiously interfere with Medizone's business prospects in order to buy the company on the cheap in bankruptcy. They tortiously interfered with Medizone's business in at least two ways.

5. First, for several months prior to the involuntary petition, the Marshalls actively worked to destroy the company through a smear campaign. The Marshalls began disseminating misinformation about the company's leadership to shareholders and suppliers, some of whom were being actively targeted by the Objectors as potential investors in Medizone. Ed Marshall circulated misinformation about Medizone in electronic documents and in phone conversations with numerous Medizone shareholders and suppliers. Given his leadership role at Medizone for over 19 years, Ed Marshall was able to rapidly spread misinformation to shareholders and suppliers. Indeed, one shareholder threatened David Esposito's physical safety based on misinformation received from Ed Marshall, which David Esposito reported to the FBI.

6. Second, the Objectors believe that Ed Marshall may have conspired with a former Medizone officer to delay shipment of product to customers. These efforts frustrated customers, damaged Medizone's reputation with potential suppliers and investors, and resulted in a loss of business prospects.

7. To date the Marshalls have largely been rewarded for their bad acts. They were able to purchase substantially all of Medizone's assets at a fire sale and now stand to reap the lion's share of any litigation recoveries against unnamed targets. It is unclear whether the Chapter 7 Trustee ever investigated the Marshalls' misconduct prior to agreeing to sell Medizone's assets to the Marshalls or seek approval of the proposed settlement. To date Meyers has deposed each Objector and Medizone's prior bankruptcy

counsel Matthew Zirzow. It appears that the Chapter 7 Trustee will be pursuing an action against the Objectors despite their unyielding efforts to save the company from financial ruin, which was largely precipitated by the Marshalls misconduct both during and after their stewardship of Medizone.

## **OBJECTION**

8. The Objectors raise two objections with respect to the Settlement Motion and Application. First, Meyers is conflicted from representing the Chapter 7 Trustee because he also represents the Marshalls. Meyers' proposed retention broadly covers estate claims against all former directors and officers of Medizone. The retention, therefore, potentially includes estate claims against the Marshalls. The Trustee's counsel has advised that Meyers would not represent the estate in any action against the Marshalls. This begs the question, however, of how Meyers will pursue any action against the Objectors. The Objectors will not only defend the action based on the Marshalls' gross misconduct, but they would wish to pursue claims against the Marshalls on behalf of the estate in any such action. Meyers cannot represent the estate in an action in which the estate is bringing claims against the Marshalls. For these reasons, the Application should be denied.

9. Second, the Settlement Motion is devoid of any rationale for the lopsided split of litigation recoveries between the estate and the Marshalls. There is no justification for the Marshalls to recover 75% of net litigation recoveries. This inequitable split is particularly troubling given the Marshalls' prior bad acts. Further, in the event that the Marshalls are found liable to the estate, they would receive the lion's share of recoveries. The Marshalls should not be entitled to any recoveries if they are found liable to the estate.

///

///

///

///

## CONCLUSION

WHEREFORE, the Objectors respectfully request that the Settlement Motion and Application be denied and that the Court grant the Objectors such further relief as the Court deems just and appropriate.

DATED this 10 day of April, 2019.

_____
Stephen W. Mooney, Esq.
Jeremy R. Alberts, Esq.
WEINBERG, WHEELER, HUDGINS,
  GUNN & DIAL, LLC
6385 S. Rainbow Blvd., Suite 400
Las Vegas, NV 89118
*Attorneys for David Dodd, David Esposito and Phil Theodore*



## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC, and that on the 11th day of April, 2019, the foregoing **OBJECTION TO (A) APPLICATION TO EMPLOY MEYERS LAW GROUP, P.C., AS SPECIAL LITIGATION COUNSEL PURSUANT TO 11 U.S.C. § 327(e) AND (B) MOTION FOR APPROVAL OF AMENDED SETTLEMENT AGREEMENT** was served by e-service, in accordance with the Electronic Filing Procedures of the United States District Court.

_____
An Employee of Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC

**AFFIDAVIT OF DAVID ESPOSITO**

STATE OF FLORIDA )
)
COUNTY OF SARASOTA )

David Esposito, being first duly sworn, deposes and says:

1. I am an adult resident of Kalamazoo County, Michigan, over 18 years of age, and I have personal knowledge of the matters set forth herein, except as stated upon belief, which matters I believe to be true.

2. In March 2017, I was appointed by Medizone's Board of Directors as the company's Chairman of the Board and interim Chief Executive Officer in an effort to resuscitate the company. My appointment followed the abrupt resignations of Ed and Jill Marshall after 19 years as Medizone's Chief Executive Officer and Director of Operations, respectively. At the time of the Marshalls' resignations, Medizone lacked sufficient cash for operations, had an approximately $50,000 shortfall on March 2017 payables to employees and service providers, and lacked the prospect of significant sales because the Marshalls failed to succeed on key commercial milestones and secure needed regulatory approvals.

3. In an effort to resuscitate Medizone, in March 2017 I was appointed as the company's interim Chief Executive Officer and Chairman of the Board of Directors. I was later succeeded by David Dodd as Chief Executive Officer but remained the Chairman of the Board of Directors. I, along with David Dodd and Philip Theodore, Medizone's General Counsel (collectively, Medizone's management), invested over $500,000 of their personal funds into Medizone to right the ship. Management took zero salary and was not reimbursed for expenses. Additionally, management made significant progress in preparing for customer beta tests/trials in the United States for Medizone's AsepticSure product and clarifying a regulatory pathway to gain FDA clearance and begin required product testing. Management was also focused on securing critical financing to

maintain business operations and alternatively seeking numerous strategic options for the company.

4. These efforts were cut short by the Marshalls' filing of the involuntary petition against Medizone without any notice to management. For several months prior to the involuntary petition, the Marshalls actively worked to destroy the company through a smear campaign. The Marshalls began disseminating misinformation about the company's leadership to shareholders and suppliers, some of whom were being actively targeted by management as potential investors in Medizone. Ed Marshall circulated misinformation about Medizone's leadership in electronic documents and in phone conversations with numerous Medizone shareholders and suppliers. Given his leadership role at Medizone for over 19 years, Ed Marshall was able to rapidly spread misinformation to shareholders and suppliers. Indeed, one shareholder threatened my physical safety based on misinformation received from Ed Marshall, which I reported to the FBI.

DATED this 4th day of April, 2019.

_____
David Esposito

SUBSCRIBED AND SWORN to before me this __4th__ day of April, 2019.

_____
NOTARY PUBLIC  Susan Rudrud

SUSAN RUDRUD
Notary Public, State of Florida
Commission# FF 207421
My comm. expires May 9, 2019